**STATE of Minnesota, Respondent,**

v.

**Michael Neal VANCE, Appellant.**

No. A05–459.

Supreme Court of Minnesota.

July 12, 2007.

John M. Stuart, State Public Defender, Theodore David Sampsell–Jones, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Lori Swanson, Attorney General, St. Paul, MN, James Backstrom, Dakota County Attorney, Kevin J. Golden, Assistant Dakota County Attorney, Hastings, MN, for Respondent.

## OPINION

ANDERSON, PAUL H., Justice.

A Dakota County jury found Michael Neal Vance guilty of third-degree assault and making terroristic threats. The district court entered convictions for both offenses, and after finding that they were part of the same course of conduct, sentenced Vance to 24 months in prison for the third-degree assault conviction. Vance appealed his convictions claiming, among

other things, that the court erred when it failed to instruct the jury on the definition of assault, thereby omitting the element of intent from the instructions. The Minnesota Court of Appeals affirmed Vance's convictions. Vance petitioned our court for review, citing both the alleged jury instruction error and ineffective assistance of trial counsel. We granted review on the jury instruction issue. We reverse.

Appellant Michael Neal Vance appeals his third-degree assault conviction for an assault on C.S. Vance was living at C.S.'s home when the assault occurred. Vance testified that C.S. was his girlfriend at the time, but C.S. testified that they were no longer romantically involved and she was only allowing Vance to stay at her home because she was afraid of him. C.S. said that in the past, she had called the police to have Vance removed from her home, but he returned numerous times, sometimes breaking down the door to get into the home. C.S. testified that Vance had threatened her on several occasions before the alleged assault and had told her that he would kill her if she called the police.

C.S. testified that on the morning of June 19, 2004, she and Vance began arguing from the time they woke up to go to work. She said that the day was "pretty much a blur" and that she did not remember what they were arguing about. She did remember Vance smashing collectible beer cans and then punching her in the mouth. After Vance hit C.S., he went into the kitchen to get some ice, and C.S. headed for the front door in an effort to get away from Vance because she was afraid of him. C.S. testified that Vance saw her leave the home and came after her. C.S. remembered seeing Vance leap at her from the top of the front steps as she was running across the yard to the neighbors to get help. The next thing she remembered was being in the bathroom of her home, with her shirt off, holding her shoulder, and being in unbearable pain. She also remembered noticing that she had a black eye and a "black mouth."

After C.S. was injured, her friend B.G. arrived to drive Vance to work. B.G. testified that when she arrived at C.S.'s home, the windows were all covered with sheets or towels and the furniture was in disarray. Upon entering the home, B.G. found C.S. and Vance sitting on C.S.'s bed. B.G. testified that when she asked them what was going on, Vance said "I don't know what happened to her. I guess she just r[an] outside and ran into the fire hydrant." B.G. then took C.S. to the hospital, where it was determined that she had a broken collarbone and scratch or bite marks on the back of her shoulder.

At Vance's trial, the police officer who first responded to the report of domestic assault at C.S.'s home testified that C.S. told him that sometime after the assault, she had received threatening telephone calls from Vance. Another officer testified that C.S. told him that Vance had threatened to kill C.S. if she reported the assault to the police. C.S. testified at trial that Vance had threatened her in the past, but she did not expressly state that he threatened her at any time during or after the assault.

A warrant was issued for Vance's arrest on June 23, 2004. He was charged by complaint with assault in the third degree and making terroristic threats. At the time the warrant was issued, Vance was in custody in Illinois, and he was ultimately extradited to Minnesota.

Vance testified to a very different version of events than did C.S. He testified that in the five days leading up to the alleged assault, C.S. had been smoking methamphetamine. He stated that in the early morning hours of June 19, he was drawing an eagle head on the ceiling of the

bedroom he shared with C.S. and, while he was doing so, C.S. was screaming and yelling at him. He testified that sometime between 3:30 and 4 a.m., C.S. decided to leave to go to a friend's house. When C.S. decided to leave, Vance told her that she could not drive her car. Vance testified that he would not let C.S. drive because she had been smoking methamphetamine and was also on medication. He told the jury that C.S. was in such bad shape that she needed help getting to the bathroom.

Vance testified that when he heard C.S. leave the home, he ran outside to stop her. He said that as he lunged to grab C.S., she tripped and he fell on top of her. He said that he then picked up C.S., recognized that she was hurt, and told her she needed to go to the hospital emergency room. He said that C.S. resisted his attempt to get medical treatment and that she just wanted to go back into the home. He then carried C.S. into the home and helped her take off her shirt. Vance said that when B.G. arrived, he told B.G., "[C.S.] fell. I fell on top of her." During his testimony, Vance stated, "I didn't mean to hurt my girlfriend."

Before closing arguments, the district court instructed the jury regarding the law of third-degree assault. The court stated:

> The statutes of Minnesota provide that whoever assaults another and inflicts substantial bodily harm is guilty of a crime. The elements of assault in the third degree are: First, the defendant assaulted another person; second, the defendant inflicted substantial bodily harm on the other person. Substantial bodily harm means bodily harm that involves a temporary but substantial disfigurement, causes a temporary but sub-stantial loss or impairment of the function of any bodily member or organ, or causes a fracture of any bodily member. *It is not necessary for the State to prove that the defendant intended to inflict substantial bodily harm but only that the defendant intended to commit the assault.* Third, the defendant's [sic] took place on or about June 19, 2004, in Dakota County.

(Emphasis added.) Defense counsel did not object to this or any other jury instruction.

The jury found Vance guilty of third-degree assault and making terroristic threats. The district court convicted him of both offenses, and sentenced him to 24 months in prison for the third-degree assault conviction.[1] Vance appealed to the court of appeals, claiming among other things that the district court erred when it failed to instruct the jury on the element of intent, and that he received ineffective assistance of trial counsel. *State v. Vance,* No. A05–459, 2006 WL 1072996, at *1 (Minn.App. Apr.25, 2006). The court of appeals affirmed the convictions, holding that the jury instructions did not constitute plain error. *Id.* at *3. The court declined to reach the merits of the ineffective assistance of counsel claim, and rejected Vance's other claims. *Id.* at *3–5. Vance then petitioned for review, which we granted on the jury instruction issue.

 Vance concedes that his counsel failed to object to the jury instructions given at trial. Failure to object to jury instructions before they are given generally constitutes a forfeiture of the right to an appeal based on those instructions. *See State v. White,* 684 N.W.2d 500, 508 (Minn.

---

1. The district court concluded that the terroristic threats were part of the same course of conduct as the assault. Vance was also sentenced at the same time on an unrelated fifth-degree assault offense. The court imposed a 90–day jail sentence for this offense to be served concurrently with the 24–month sentence for third-degree assault.

2004) (citing among other authorities Minn. R.Crim. P. 26.03, subd. 18(3)). But failure to object will not preclude appellate review if the instructions constitute plain error affecting substantial rights or an error of fundamental law. *Id.* (citing among other authorities Minn. R.Crim. P. 26.03, subd. 18(3)).[2] Vance argued to the court of appeals that the district court's failure to instruct the jury regarding the element of intent should be analyzed under the plain error standard of review. *Vance,* 2006 WL 1072996, at *2. The court of appeals agreed and applied that standard. *Id.* at *2–3. Vance now argues that under *State v. Osborne,* 715 N.W.2d 436 (Minn. 2006), we should apply a harmless error standard of review because the failure to instruct the jury on an element of the

offense is tantamount to the denial of the right to a jury trial on that element, which right cannot be forfeited by silence, but only by an affirmative waiver under Minn. R.Crim. P. 26.01, subd. 1(2).[3] Because Vance argued for a plain error standard of review at the court of appeals and that standard may render moot Vance's arguments under *Osborne,* we will begin our analysis by applying the plain error standard and then, if necessary, we will consider Vance's argument under *Osborne.*

◼ Generally, when there is no argument that an unobjected-to jury instruction violated a defendant's right to a jury trial, we have reviewed that instruction under the plain error standard. Under this standard, we may review an unobjected-to error only if there is (1) error; (2)

2. Minn. R.Crim. P. 26.03, subd. 18(3), provides that

[n]o party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict. * * * An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court.

3. In order to determine the standard of review applicable to erroneous jury instructions, it is important to understand the interplay of Minn. R.Crim. P. 26.03, subd. 18(3), and Minn. R.Crim. P. 31.02. Rule 26.03, subd. 18(3), provides that unobjected-to jury instructions that contain an error in fundamental law or controlling principle may be assigned in a motion for a new trial. Rule 31.02, on the other hand, provides that plain errors or defects affecting substantial rights may be considered upon a motion for a new trial, post-trial motions, and on appeal although not brought to the attention of the district court. Under Rule 26.03, subd. 18(3), if a defendant challenges an instruction in a new trial motion and the motion is denied, the issue is preserved for appeal and a harmless error standard of review applies. *See State v. Glowacki,* 630 N.W.2d 392, 398, 402–03 (Minn.2001) (holding that a new trial mo-

tion adequately preserves a jury instruction error but stressing that the error "must be one of fundamental law or controlling principle," and applying the harmless error standard to an erroneous instruction that the defendant had a duty to retreat before defending against an offense in the home); *State v. La-Forge,* 347 N.W.2d 247, 251, 256 (Minn.1984) (holding that jury instruction error is preserved by new trial motion under Rule 26.03, subd. 18(3), and that unconstitutional instruction allowing jury to presume intent cannot be deemed harmless under *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983)).

It follows from the foregoing cases that if the error is not one of fundamental law or controlling principle, challenging it in a new trial motion is ineffectual to preserve the error for harmless error review on appeal. Like most errors not objected to at trial, such an error may be considered on appeal only if it meets the plain error test of Rule 31.02. Only Rule 31.02 allows *appellate* consideration of an error not brought to the attention of the district court. An appellate court's authority under Rule 31.02 is separate from its authority to consider any unobjected-to error in the interests of justice under Minn. R.Crim. P. 28.02, subd. 11 (incorporated by reference in Rules 29.03, subd. 4 and 29.04, subd. 11).

that is plain; and (3) that affects substantial rights. *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn.2001). Plain error has been described as "clear error affecting substantial rights that resulted in a miscarriage of justice." *United States v. Pennington*, 168 F.3d 1060, 1068 (8th Cir. 1999). We have stated that an error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict. *See State v. Young*, 710 N.W.2d 272, 280 (Minn.2006) (quotation marks omitted). If the three prongs of the plain error test are met, we may reverse if we conclude that reversal is required to ensure fairness and the integrity of the judicial proceedings. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

### Did the district court err?

■ We have stated that "[d]istrict courts are allowed considerable latitude in the selection of language for jury instructions." *State v. Ihle*, 640 N.W.2d 910, 916 (Minn.2002). When we review jury instructions for error, we review the instructions in their entirety to determine whether they fairly and adequately explain the law. *Id.* An instruction that materially misstates the law is error. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001). It is well settled that jury instructions must define the crime charged and explain the elements of the offense to the jury. *See Ihle*, 640 N.W.2d at 916.

Vance was tried for, among other things, third-degree assault. Minnesota law provides that "[w]hoever assaults another and inflicts substantial bodily harm" is guilty of assault in the third degree. Minn.Stat. § 609.223, subd. 1 (2006). Assault is defined as

(1) an act done with intent to cause fear in another of immediate bodily harm or death; or

(2) the intentional infliction of or attempt to inflict bodily harm upon another.

Minn.Stat. § 609.02, subd. 10 (2004).[4] The statute further provides that the element of criminal intent is established when "the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." *Id.*, subd. 9(4).

■ We have stated that assault is a *specific intent* crime. *State v. Edrozo*, 578 N.W.2d 719, 723 (Minn.1998). Specific intent means that the defendant acted with the intent to produce a specific result, whereas *general intent* means only that the defendant intentionally engaged in prohibited conduct. *State v. Orsello*, 554 N.W.2d 70, 72 (Minn.1996) (superseded by statute on other grounds). Therefore, to prove assault, "[t]he prosecutor must prove beyond a reasonable doubt that the defendant * * * intentionally inflicted or attempted to inflict bodily harm on another." *Edrozo*, 578 N.W.2d at 723 (citing Minn.Stat. § 609.02, subd. 10). While the various degrees of assault require proof of different levels of actual harm, the assault statutes do not require a finding by the jury that a defendant intended to cause a specific level of harm. *See Johnson v. State*, 421 N.W.2d 327, 331 (Minn.App. 1988). Thus, while the state did not have to prove that Vance intentionally inflicted *substantial bodily harm*, the state did have to prove that he intentionally inflicted *bodily harm*.

■ Vance claims that the district court erred when it failed to inform the jury that intentional infliction of bodily

---

**4.** The first type of assault was neither argued nor presented to the jury, and the jury instructions made no reference to the first type of assault.

harm is an element of the crime of third-degree assault. The state counters that the court properly instructed the jury as to the element of intent by informing the jury that in order to be guilty of third-degree assault, Vance had to intend to commit the assault. While the instructions the court gave to the jury were taken directly from CRIMJIG 13.15 and CRIMJIG 13.16, which are applicable to the crime of third-degree assault, the court did not give CRIMJIG 13.01. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 13.01, 13.15, 13.16 (5th ed.2006). Criminal Jury Instruction Guide 13.01 instructs the jury that "[t]he statutes of Minnesota provide that whoever * * * intentionally inflicts or attempts to inflict bodily harm upon another, is guilty of a crime." Thus, if given to the jury, CRIMJIG 13.01 would have provided the underlying definition of assault.

But, as noted above, the jury in Vance's case never received the instruction contained in CRIMJIG 13.01. Instead, the district court instructed the jury that "[i]t is not necessary for the State to prove that the defendant intended to inflict substantial bodily harm but only that the defendant intended to commit the assault." We conclude that by omitting CRIMJIG 13.01, the court failed to inform the jury that for Vance to be guilty of third-degree assault, he had to intentionally inflict bodily harm

on C.S. In addition, we conclude that by instructing the jury that "it is *not* necessary for the State to prove that [Vance] intended to inflict substantial bodily harm" (emphasis added), the court gave the jury the opposite impression, namely that intent to harm did *not* have to be proven, and that intent to commit the act that resulted in the harm was enough.

■■■ As stated by the United States Supreme Court in *Apprendi v. New Jersey*, the Fourteenth Amendment's guarantee of due process and the Sixth Amendment's guarantee of a jury trial "entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" 530 U.S. 466, 476–77, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (alteration in original) (quoting *United States v. Gaudin*, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)). We have also stated that "[d]ue process requires that every element of the offense charged must be proven beyond a reasonable doubt by the prosecution." *State v. Cross*, 577 N.W.2d 721, 726 (Minn.1998). Here, the jury instructions failed to inform the jury that Vance had to intentionally inflict bodily harm on C.S. Therefore, we conclude that the instructions the district court gave to the jury were erroneous because they created the possibility that the jury convicted Vance without finding that he intended to cause bodily harm.[5]

---

5. While not claimed as error by Vance, we also note that the district court's failure to instruct the jury on the definition of intent compounded the erroneous omission of the element of intentional infliction of bodily harm from the jury instructions. Had the court given CRIMJIG 7.10 in this case, the jury would have been told that

"intentionally" means that the actor either has a purpose to do the thing or cause the result specified, or believes that the act performed by the actor, if successful, will cause the result. In addition, the actor

must have knowledge of those facts that are necessary to make the actor's conduct criminal and that are set forth after the word "intentionally."

10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 7.10 (5th ed.2006). The court has the "obligation to clearly instruct the jurors on exactly what it is that they must decide." *State v. Peterson*, 673 N.W.2d 482, 485 (Minn. 2004). *See also* Minn. R.Crim. P. 26.03, subd. 18(5). By providing CRIMJIG 7.10 in this case, the court would have focused the jury

### Is the error plain?

Having concluded that the district court committed error, we must next determine whether that error is plain. An error is plain if it is "clear" or "obvious." *State v. Burg,* 648 N.W.2d 673, 677 (Minn.2002) (quoting *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). In a recent case, we stated that an error is plain "if the error contravenes case law, a rule, or a standard of conduct." *State v. Ramey,* 721 N.W.2d 294, 302 (Minn.2006). We have previously held that failure to properly instruct the jury on all elements of the offense charged is plain error. In *Ihle,* we considered a challenge to jury instructions for the offense of obstructing legal process. 640 N.W.2d at 912. The relevant statute prohibited intentionally obstructing "the lawful execution of any legal process" and obstructing "a peace officer while the officer is engaged in the performance of official duties." *Id.* at 915 (quoting Minn.Stat. § 609.50, subd. 1(1), (2) (2000)). But 13 years before we decided *Ihle,* we had given a narrow construction to the statute in *State v. Krawsky,* 426 N.W.2d 875, 877 (Minn.1988), concluding that the statute prohibits only acts and words "that have the effect of *physically* obstructing * * * a police officer." *Ihle,* 640 N.W.2d at 915 (emphasis added). We therefore held that the district court in *Ihle* committed "clear and obvious" error when it gave an instruction that "recited the elements of the obstruction statute" but failed to reflect

the narrow construction we had previously given. *Id.* at 916–17.

Other jurisdictions, both federal and state, have recognized that failure to instruct the jury on an element of an offense constitutes plain error. *See, e.g., United States v. Gaither,* 440 F.2d 262, 264 (D.C.Cir.1971) (holding that "any omission of an element of a crime in the instructions to the jury is plain error"); *People v. Fichtner,* 869 P.2d 539, 543 (Colo.1994) (holding that "[a] trial court's failure to instruct a jury on the essential elements of a crime constitutes plain error").[6] The Supreme Court has also held that a district court's failure "to submit to the jury the essential ingredients of the only offense on which the conviction could rest" is fundamental error, of which a reviewing court should take note even in the absence of objection at trial. *Screws v. United States,* 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

The state asserts that any error by the district court in this case is not plain because the law on erroneous jury instructions is not clear. But we conclude that such an argument is more appropriately considered under the third prong of the plain error test, as the legal issue that is arguably unclear is whether jury instructions that omit an element of the crime can ever be harmless. In contrast, the law that informs our decision as to the plainness of the error is well settled—intention-

---

on the salient aspect of the intent element—namely, the purpose to cause bodily injury.

**6.** *See also United States v. Alferahin,* 433 F.3d 1148, 1157 (9th Cir.2006); *United States v. Plitman,* 194 F.3d 59, 65 (2d Cir.1999); *United States v. Bordeaux,* 121 F.3d 1187, 1189–90 (8th Cir.1997); *United States v. Miller,* 111 F.3d 747, 750 (10th Cir.1997); *United States v. Garza,* 42 F.3d 251, 253 (5th Cir.1994); *United States v. McLamb,* 985 F.2d 1284, 1293 (4th Cir.1993); *Government of Virgin Islands*

*v. Brown,* 685 F.2d 834, 839 (3d Cir.1982); *United States v. Krosky,* 418 F.2d 65, 67–68 (6th Cir.1969); *United States v. Hutchison,* 338 F.2d 991, 991 (4th Cir.1964); *United States v. Noble,* 155 F.2d 315, 316–18 (3d Cir.1946); *State v. Harman,* 198 Conn. 124, 502 A.2d 381, 386 (1985); *Kolberg v. State,* 829 So.2d 29, 47 (Miss.2002); *State v. Miller,* 184 W.Va. 367, 400 S.E.2d 611, 612–13 (1990).

al infliction of bodily harm is an element of the crime of assault, and jury instructions must include all elements of the offense. *See* Minn.Stat. § 609.02, subd. 10; *Ihle,* 640 N.W.2d at 916; *Kuhnau,* 622 N.W.2d at 556–58. Therefore, we conclude that the district court committed plain error when it failed to instruct the jury on the intent element of the crime of third-degree assault.

### Did the plain error affect substantial rights?

▮ When addressing the third prong of the plain error test—whether the plain error affected substantial rights—we ask whether the error was prejudicial and affected the outcome of the case. *Griller,* 583 N.W.2d at 741. We have said that the defendant bears the "heavy burden" of showing that any error was prejudicial. *Burg,* 648 N.W.2d at 677. An erroneous jury instruction "is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury verdict." *State v. Gomez,* 721 N.W.2d 871, 880 (Minn.2006).

Vance acknowledges that case law is inconsistent with respect to whether the failure to instruct the jury on an element of an offense can ever be harmless—that is, whether a reviewing court can ever conclude that the failure to instruct on an element did not have a significant effect on the jury verdict. More particularly, Vance notes that in some cases, courts have indicated that such a failure is prejudicial per se, while in other cases, courts have concluded that the failure to submit an element of the offense to the jury is harmless under particular circumstances. Vance argues that regardless of the approach we take in this case, he should prevail. The state argues that failure to instruct on an element can be harmless under some circumstances, and such circumstances exist here.

As Vance asserts, the Supreme Court, our court, and other courts have at times indicated that the failure to submit an element of the offense to the jury is necessarily prejudicial and therefore leads to reversal. For example, in *Connecticut v. Johnson,* the Supreme Court held that if a jury may have failed to consider the evidence of intent due to an erroneous jury instruction, a reviewing court cannot hold that the error did not contribute to the verdict. 460 U.S. 73, 85–87, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983).[7] Similarly, in *State v. Moore,* we held that harmless error analysis is not applicable when the defendant is deprived of the right to have the jury determine that every element of the charged offense has been established. 699 N.W.2d 733, 738 (Minn.2005). The Ninth Circuit reached a similar conclusion in

---

**7.** The plurality in *Connecticut v. Johnson* concluded that an instruction to the jury that "every person is conclusively presumed to intend the natural and necessary consequences of his act" took away the element of intent from the jury and was "the functional equivalent of a directed verdict on that issue." 460 U.S. at 78, 84, 103 S.Ct. 969. The *Johnson* plurality went on to explain that

[i]f the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. To al-

low a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made. *Id.* at 85–86, 103 S.Ct. 969 (footnote omitted). *See also State v. Williams,* 324 N.W.2d 154, 160 (Minn.1982) (holding that when intent is an element of the offense, the court may not withdraw the issue from the jury by instructing that the law raises a presumption of intent from an act).

*United States v. Gaudin*, 28 F.3d 943 (9th Cir.1994) (en banc), *aff'd*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). In *Gaudin*, the court concluded that when an element is removed from the jury's consideration, a reviewing court cannot evaluate the strength of the evidence on that element because the jury was precluded from considering whether the element existed at all. *Id.* at 951–52.

 Yet the Supreme Court and our court have also concluded that under particular circumstances, the failure to submit an element of the offense to the jury is harmless. For example, in *Neder v. United States*, the Supreme Court concluded that erroneous jury instructions were harmless when the omitted element was not contested at trial and the record contained overwhelming evidence establishing the omitted element. 527 U.S. 1, 17, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In *Neder*, the Court specifically addressed the concern raised by the plurality in *Connecticut v. Johnson*, explaining that "[i]n a case such as this one, where a defendant did not, and apparently could not, bring forth facts contesting the omitted element, answering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee." 527 U.S. at 18–19, 119 S.Ct. 1827. The extent of the evidence on intent was also a key factor in the Court's decision in

*Yates v. Evatt*, though in that case, the Court held that an erroneous jury instruction was *not* harmless beyond a reasonable doubt because the evidentiary record was inconclusive. 500 U.S. 391, 408–11, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), *overruled on another point by Estelle v. McGuire*, 502 U.S. 62, 72 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).[8]

Some of our court's decisions involving the omission of an element from jury instructions reflect the Supreme Court's approach in *Neder* and *Yates*. For example, in *State v. Spencer*, we declined to reverse a conviction for aggravated assault when the jury was erroneously instructed that the element of intent was not required in order to find the defendant guilty. 298 Minn. 456, 463–64, 216 N.W.2d 131, 136 (1974). We based our decision in *Spencer* on the fact that the controversy at trial centered on the identity of the shooter, and not on the question of intent. *Id.* at 464, 216 N.W.2d at 136. We also noted that there was considerable evidence from which the jury could have inferred intent, namely that "the defendant held a loaded gun on the [victim], deliberately cocked the weapon, and then fired a bullet into [the victim's] back." *Id.*

Likewise, in *Ihle*, we held that jury instructions that omitted an element of the offense did not meet the third prong of the plain error test because there was "no

**8.** Although the harmless error standard differs from the plain error standard, both the harmless error standard and the third prong of the plain error test consider whether the error contributed to the verdict. Thus, in determining whether the erroneous jury instructions in this case affected the jury's verdict, we are informed by erroneous jury instruction cases applying both the harmless error standard and the plain error standard.

Under harmless error review, a lower court error of constitutional dimensions will be reversed unless the reviewing court is able to

"declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). For an error to be harmless beyond a reasonable doubt, the verdict "must be 'surely unattributable' to the error." *State v. Shoen*, 598 N.W.2d 370, 377 (Minn.1999) (quoting *State v. Juarez*, 572 N.W.2d 286, 292 (Minn. 1997)). A lower court error satisfies the third prong of the plain error test if there is a reasonable likelihood that the error had a significant effect on the jury's verdict. *State v. Young*, 710 N.W.2d 272, 280 (Minn.2006).

reasonable likelihood that a more accurate instruction would have changed the outcome." 640 N.W.2d at 917. We based this holding on the fact that a special verdict form required the jury to find the omitted element and on the fact that the jury also found the defendant guilty of another offense which arguably required the finding of the omitted element. *Id.*

While not citing *Ihle*, the state relies on similar logic to argue that a different instruction would not have changed the verdict in this case because the jury was instructed that for Vance to be guilty, the assault on C.S. had to be an intentional act. The state also argues that Vance's testimony was unbelievable and that if the jury had believed Vance's version of events, they would have acquitted him. Here, the state cites *Griller* for the proposition that when a defendant's story is "wholly unbelievable, * * * it is unlikely that any erroneous instruction significantly affected the verdict." 583 N.W.2d at 742. But in *Griller*, we refrained from making a determination regarding the third prong of the plain error test, stating that, "[w]hile * * * credibility is an issue for the jury, here the jury clearly rejected Griller's self-defense argument." *Id.* (footnote omitted).

We acknowledge that the law is unclear regarding whether the omission of an element from jury instructions is necessarily prejudicial or may instead be subject to a harmless error analysis. But we conclude that we need not address the lack of clarity in the law because Vance's case is factually distinguishable from all of the foregoing cases in which a court deemed harmless the failure to submit an element of the offense to the jury. Vance, unlike the defendants in *Neder* and *Spencer*, presented some evidence that tended to negate the omitted element of intent. Specifically, Vance testified that while he did

lunge at and attempt to grab C.S. in an effort to stop her from driving her car, he never intended to hurt her. Also, unlike in *Ihle*, the jury's verdict in this case did not include other verdicts that necessarily encompassed the omitted element. And finally, the evidence of intent in this case is not as strong as it was in *Spencer*.

We have held that the third prong of the plain error test is met when there is a reasonable likelihood that a properly instructed jury could have accepted the defendant's version of events. In *State v. Baird*, for example, we held that a jury instruction that erroneously stated that the defendant, who claimed self defense, had a duty to retreat from his home met the third prong of the plain error test. 654 N.W.2d 105, 113–14 (Minn.2002). We concluded that a properly instructed jury could have found that Baird acted in self defense and that it was "impossible to determine whether the jury rejected Baird's version of the facts or whether it accepted his version but concluded that he was guilty nevertheless because he failed to retreat." *Id.* at 114.

Here, as in *Baird*, the jury was erroneously instructed on a key element. At Vance's trial, the jury was told that "[i]t is not necessary for the State to prove that the defendant intended to inflict substantial bodily harm but only that the defendant intended to commit the assault." Contrary to the state's contention, instructing the jury that Vance had to intend the act—tackling or restraining C.S.—is not the same as instructing the jury that Vance had to intend the result—bodily harm to C.S. The jury was never instructed that in order to be guilty of assault, Vance had to intentionally inflict bodily harm on C.S. In other words, the jury was instructed on general intent even though assault is a specific-intent crime. We therefore conclude that, based on the in-

structions given and on the evidence in the record, it is possible that the jury never considered whether Vance intended to cause bodily harm to C.S. It is even possible that the jury found that Vance did not intend to cause bodily harm to C.S., but believed that the intent to tackle or restrain C.S. was sufficient to satisfy the intent element of the offense. As in *Baird*, it is impossible in this case to determine whether the jury rejected Vance's version of the facts or whether it accepted his claim that the injury to C.S. was accidental, but concluded that he was guilty nevertheless because he intended to restrain or tackle C.S.

For all of the foregoing reasons, we conclude that there is a reasonable likelihood that the omission of the element of intent from the jury instructions had a significant effect on the verdict rendered by the jury. Therefore, we conclude that the district court's omission of the element of intent from the jury instructions constitutes plain error affecting Vance's substantial rights.

### Is reversal required to ensure fairness and the integrity of the judicial proceedings?

Having concluded that the three prongs of the plain error test have been met, we must now determine whether reversal is necessary to ensure fairness and the integrity of the judicial proceedings. *See Griller,* 583 N.W.2d at 740. In *Johnson v. United States*, the Supreme Court refrained from determining whether the defendant was prejudiced by plain error and instead held that, because the evidence in support of the omitted element was both overwhelming and uncontroverted at trial, there was no basis on appeal to conclude

that the error seriously affected the fairness or integrity of the judicial proceedings. 520 U.S. 461, 469–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). We reached the same conclusion in *Griller.* 583 N.W.2d at 742 (citing *Johnson,* 520 U.S. at 469–70, 117 S.Ct. 1544).

But in *Baird*, where the defendant claimed self defense and the court erroneously instructed the jury that the defendant had a duty to retreat from his home, we observed that "the jury may not have considered whether Baird's conduct was reasonable under the circumstances." *Baird,* 654 N.W.2d at 114. In *Baird,* we affirmed the court of appeals' reversal of the defendant's conviction, holding that "[f]airness requires that Baird be given an opportunity to present his account of the facts to a jury under the proper instructions." *Id.*

This case is similar to *Baird* because, as previously noted, the jury may not have considered whether Vance intentionally inflicted bodily harm to C.S. Here, Vance did not have the opportunity to have his account of the facts considered under the proper jury instructions, and the jury may have convicted him under the instructions given even if it believed that he never intentionally inflicted bodily harm on C.S. Therefore, we conclude that the fairness and integrity of the judicial proceedings are called into question by the erroneous instructions and the verdict based on those instructions.

For all of the foregoing reasons, we hold that a reversal of Vance's conviction for third-degree assault is necessary. Accordingly, we remand to the district court for adjudication and sentencing on the terroristic threat conviction [9] or, if the state so

9. Third-degree assault and making terroristic threats are both classified as severity level four offenses under the Minnesota Sentencing

Guidelines. Applying *State v. Pflepsen,* the district court could formally adjudicate Vance's terroristic threat conviction and im-

chooses, a new trial on the third-degree assault charge.

Reversed and remanded.

ANDERSON, Chief Justice (concurring).

I concur in the result but write separately to emphasize that the district court followed the pattern jury instruction for third-degree assault. It appears that the

anomaly in the pattern jury instruction for third-degree assault dates back to changes made in 1990. Prior to that time, the instruction incorporated the meaning of assault into the first element of the offense.[1] The 1990 version of the instruction removed the explanation.[2] The 1999 version added that the state did not have to prove intent to cause the specified degree of harm.[3] And by comment, the 1999 jury

pose the same sentence Vance received for the third-degree assault conviction, with credit for time already served on the assault sentence. 590 N.W.2d 759, 766 (Minn.1999) (quoting *State v. LaTourelle*, 343 N.W.2d 277 (Minn.1984)).

1. The pre–1990 jury instruction for third-degree assault provided:

> The elements of assault in the third degree are:
> First, defendant assaulted _____. This means that defendant intentionally inflicted bodily harm on _____.
> Second, defendant inflicted substantial bodily harm on _____. Substantial bodily harm means bodily harm which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member.
> Third, defendant's act took place on (or about) _____ in4 _____ County.
> If you find that each of these three elements has been proved beyond a reasonable doubt, defendant is guilty of assault in the third degree. If you find that any of these elements has not been proved beyond a reasonable doubt, defendant is not guilty of assault in the third degree.

10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 13.08 (2d ed.1985).

2. The 1990 jury instruction for third-degree assault provided:

> The elements of assault in the third degree are:
> First, defendant assaulted _____.
> Second, defendant inflicted substantial bodily harm on _____. Substantial bodily harm means bodily harm which involves a temporary but substantial disfigurement, or which causes a temporary but substantial

loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member.
> Third, defendant's act took place on (or about) _____ in _____ County.
> If you find that each of these three elements has been proved beyond a reasonable doubt, defendant is guilty of assault in the third degree. If you find that any of these elements has not been proved beyond a reasonable doubt, defendant is not guilty of assault in the third degree.

10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 13.08 (3d ed.1990).

3. The 1999 jury instruction for third-degree assault provided:

> The elements of assault in the third degree are:
> First, the defendant assaulted _____.
> Second, the defendant inflicted substantial bodily harm on _____. "Substantial bodily harm" means bodily harm that involves a temporary but substantial disfigurement, causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or causes a fracture of any bodily member. It is not necessary for the State to prove that the defendant intended to inflict substantial bodily harm, but only that the defendant intended to commit the assault.
> Third, the defendant's act took place on (or about) _____ in _____ County.
> If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 13.16 (4th ed.1999).

instruction guide also added that "[i]n cases in which a defendant is charged with a degree of an assault, the court *may* wish to incorporate" the definition of assault "directly into the first element of the appropriate elements instruction as a further definition of that element." 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 13.01 cmt. (4th ed.1999) (emphasis supplied).

I do tend to agree that the third-degree assault instruction should explain the assault element, i.e., that defendant assaulted complainant and that this means the defendant intentionally inflicted bodily harm on complainant. While I doubt that the omitted instruction might have prompted a reasonable jury to reach a different result, I have no problem with a remand for an adjudication and sentence on the terroristic threat conviction unless the state chooses to retry Vance on the third-degree assault charge.

GILDEA, Justice (concurring).

I join in the concurrence of Chief Justice Anderson.