*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1121**

Daniel Peter Frisch, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 7, 2014
Affirmed
Rodenberg, Judge**

Hubbard County District Court
File No. 29-CR-12-217

Renée J. Bergeron, Renee Bergeron, Attorney at Law, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donovan Dearstyne, Hubbard County Attorney, Jonathan D. Frieden, Assistant County Attorney, Park Rapids, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

On appeal from his convictions of driving while impaired in violation of Minn. Stat. § 169A.20, subd. 1(1), (5) (2010), appellant Daniel Peter Frisch argues that (1) the

evidence at trial was insufficient to support his convictions and (2) the jury instructions concerning count one are erroneous. We affirm.

## FACTS

Around 1:15 a.m. on February 16, 2012, Hubbard County Sheriff's Deputy Adam Williams was patrolling near a lumber yard in Nevis that had been recently vandalized. Deputy Williams observed headlights from one "smaller vehicle" in the area. He was unable to identify its make or model. The vehicle, the only one other than the squad car driving in the area, was travelling east on the road parallel to the road on which Deputy Williams was driving eastbound. Deputy Williams testified that both he and the other vehicle were travelling around 10 to 15 miles per hour. Deputy Williams lost sight of the vehicle each time it went behind one of the "larger buildings," which were located between the two roads. As he approached the next intersection, Deputy Williams briefly lost sight of the vehicle as it went behind a building. He then noticed that the vehicle did not appear to arrive at the intersection as "it should have."

Deputy Williams turned onto the road where he had seen the vehicle driving and "observe[d] a vehicle parked on the side of the road" in front of the lumber yard. He identified the vehicle as a truck or "smaller pickup." Deputy Williams observed a passenger, later identified as K.G., sitting in the front passenger seat of the parked vehicle and appellant standing 15 to 20 feet away at a soda machine. Deputy Williams later determined that the vehicle belonged to appellant, it was running with the keys in the ignition and the headlights were off, and it had a stick shift that required "a party to push in the clutch to start the vehicle."

2

Deputy Williams approached appellant and "asked him . . . what he was doing in the area due to past burglaries and the vandalism recently." Appellant responded that "he was getting a soda." Deputy Williams then asked appellant how the vehicle got there. According to Deputy Williams, appellant responded that he had just left the Iron Horse bar and was bringing K.G. home. Deputy Williams testified that appellant was speaking "in the present time" about driving K.G. home.

Deputy Williams testified that he noticed that appellant had bloodshot and watery eyes and smelled of alcohol. He also noticed an open bottle of Captain Morgan in the vehicle, and appellant admitted that he had been drinking. After Deputy Williams performed field sobriety tests, he arrested appellant on suspicion of driving while impaired, transported appellant to the Hubbard County Jail, and conducted a breath test one-and-one-half to two hours after he first encountered appellant in the lumber yard, which showed an alcohol concentration of .12.

Appellant was charged with second-degree driving while impaired for driving, operating, or physically controlling a motor vehicle with an alcohol concentration of .08 or more within two hours in violation of Minn. Stat. § 169A.20, subd. 1(5), and second-degree driving while impaired for driving, operating, or physically controlling a motor vehicle while under the influence of alcohol in violation of Minn. Stat. § 169A.20, subd. 1(1).

Appellant testified at trial that, on February 15, he had two or three beers with friends after work before stopping at the Iron Horse bar on his way home, that he parked his vehicle in front of the lumber yard because he "normally park[s]" there when going to

3

the Iron Horse, and that he had one drink in the hour that he was at the bar, then waited for K.G., who was bartending and needed to lock up. Appellant and K.G. then "walked over to the pop machine where [appellant's] vehicle was parked" because they intended to walk to one of their houses. Appellant explained that he lives about five blocks away from the lumber yard and that K.G. lives two or three blocks away. And appellant stated that K.G. sat down in his parked, nonrunning vehicle to wait while he was getting a soda. Appellant testified that, if he said anything to Deputy Williams about driving his vehicle, he meant that he had driven it earlier, before going to the bar.

Before trial, appellant stipulated to his two prior convictions for driving under the influence and to the result of the breath test. The case was therefore tried without reference to appellant's prior offenses, and the jury found appellant guilty of both counts of driving while impaired.

Appellant later filed a petition for postconviction relief, arguing that the evidence was insufficient to support his convictions and that the jury instructions for count one were erroneous. The district court denied appellant's petition for postconviction relief, and this appeal followed.

**D E C I S I O N**

**I.**

Appellant first argues that the evidence is insufficient to support his convictions because the evidence does not prove that he was driving, operating, or physically

4

controlling a motor vehicle.[1]  Specifically, appellant argues that the evidence is insufficient to establish physical control.  When assessing the sufficiency of evidence, "we determine whether the legitimate inferences drawn from the facts in the record . . . reasonably support the jury's conclusion that the defendant was guilty beyond a reasonable doubt."  *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012).  "In reviewing a jury verdict, we view the evidence in a light most favorable to the verdict and assume the jury believed the state's witnesses and disbelieved contrary evidence."  *State v. Stein*, 776 N.W.2d 709, 714 (Minn. 2010) (quotation omitted).

The parties disagree regarding the standard of review applicable to appellant's sufficiency-of-the-evidence challenge.  In the postconviction order, the district court applied the heightened scrutiny given to convictions based on circumstantial evidence.

There is both direct and circumstantial evidence supporting the jury's conclusion that the state had proven the first element of both counts.  Concerning driving, the record contains direct evidence in the form of Deputy Williams's testimony that appellant admitted driving "in the present time."  That testimony, if believed, was direct proof of the first element.  *See State v. Silvernail*, 831 N.W.2d 594, 604-05 (Minn. 2013) (Stras, J., concurring in part) (explaining that in a case where the state introduced both direct and

---

[1] To convict appellant of count one, the jury had to find that (1) appellant drove, operated, or physically controlled a motor vehicle, (2) his alcohol concentration was .08 or more within two hours of driving, operating, or physically controlling the vehicle, and (3) his act took place on or about February 16, 2012 in Hubbard County.  *See* 10A *Minnesota Practice*, CRIMJIG 29.12 (Supp. 2013).  To convict appellant of count two, the jury had to find that (1) appellant drove, operated, or physically controlled a motor vehicle, (2) while under the influence of alcohol, and (3) this act took place on or about February 16, 2012 in Hubbard County.  *See* 10A *Minnesota Practice*, CRIMJIG 29.02 (2006).  Appellant challenges the sufficiency of the evidence for the first element of each charge.

circumstantial evidence regarding a disputed element, a witness's testimony that the defendant confessed was direct evidence that did not require the jury to make any factual inferences). If the jury believed Deputy Williams's testimony that appellant admitted driving "in the present time," that evidence would suffice to support the jury's verdict. *See State v. McClain*, 208 Minn. 91, 95-96, 292 N.W. 753, 755 (1940) ("Confessions are held to be direct, rather than circumstantial, evidence of guilt."). Concerning physical control, the state produced circumstantial evidence that appellant was in physical control of the truck.[2]

Even if, as appellant argues, the jury's verdict depends upon its acceptance of circumstantial evidence of his having been in physical control of the vehicle, the evidence is sufficient to support the verdict. "A conviction based on circumstantial evidence . . . warrants heightened scrutiny." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Id.* We do not overturn a circumstantial-evidence conviction based on "mere conjecture." *Id.* Instead, we apply a two-step analysis when examining the sufficiency of circumstantial evidence. *Silvernail*, 831 N.W.2d at 598-99.

---

[2] As we have noted, there are instances where "it is difficult if not impossible for a reviewing court to know what evidence the jury believed" when there is both direct and circumstantial evidence concerning an element. *State v. McCormick*, 835 N.W.2d 498, 505-06 n.2 (Minn. App. 2013).

"The first step is to identify the circumstances proved. In identifying the circumstances proved, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *Id.* (citation and quotation omitted). The jury "is in the best position to determine credibility and weigh the evidence." *Al-Naseer*, 788 N.W.2d at 473. Therefore, we identify the circumstances proved "in the light most favorable to the verdict." *Pratt*, 813 N.W.2d at 874.

Viewing the evidence in the light most favorable to the verdict, the circumstances proved at trial are as follows: Deputy Williams observed one vehicle other than his own driving on a road parallel to him at approximately the same speed. He lost sight of it when it did not arrive at an intersection as "it should have." Deputy Williams then located and approached the only vehicle in the area, which was parked in front of the lumber yard on the road where he had observed the vehicle. The vehicle's keys were in the ignition, it was running, and the headlights were off. K.G. was sitting in the passenger seat and appellant was standing 15 to 20 feet away from the vehicle at a soda machine. The vehicle belonged to appellant. The temperature was below freezing. Appellant drank two or three beers after work and one strong drink at the Iron Horse. And appellant told Deputy Williams that he had just left the Iron Horse and was bringing K.G. home, speaking about having driven "in the present time."

Appellant argues that Deputy Williams's testimony regarding appellant's statements is not a proved circumstance. But, at this step of the analysis, we defer to the jury's determination, *Silvernail*, 831 N.W.2d at 598-99, and identify the circumstances

7

proved "in the light most favorable to the verdict," *Pratt*, 813 N.W.2d at 874. Because the jury convicted appellant, it necessarily rejected appellant's testimony, including his assertion that he drove his vehicle to the lumber yard before going to the Iron Horse and had walked back to the vehicle after leaving the bar. Instead, the jury believed Deputy Williams's testimony that appellant was speaking "in the present time" when he stated that he was driving K.G. home. And Deputy Williams's version of appellant's statement is a proved circumstance.

"The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotation omitted). In making this determination, "we do not review each circumstance proved in isolation" but instead consider the circumstances on the whole. *State v. Andersen*, 784 N.W.2d 320, 332 (Minn. 2010). "The [s]tate does not have the burden of removing all doubt, but of removing all reasonable doubt." *Al-Naseer*, 788 N.W.2d at 473. We independently examine the reasonableness of the possible inferences and "give no deference to the fact finder's choice between reasonable inferences." *Id.* at 473-74. To ensure that there is no reasonable doubt as to the defendant's guilt, there must be no reasonable inference inconsistent with guilt. *Id.* at 474.

"The term 'physical control' is more comprehensive than either 'drive' or 'operate.'" *State v. Starfield*, 481 N.W.2d 834, 836 (Minn. 1992). "[A] person is in physical control of a vehicle if he has the means to initiate any movement of that vehicle, and he is in close proximity to the operating controls of the vehicle." *State v. Fleck*, 777

N.W.2d 233, 236 (Minn. 2010). Physical control is "given the broadest possible effect" to "deter inebriated persons from getting into vehicles except as passengers." *Starfield*, 481 N.W.2d at 836 (quotation omitted). But "[m]ere presence in or about the vehicle is not enough for physical control; it is the overall situation that is determinative." *Id.* at 838. "We consider a number of factors in determining whether a person is in physical control of a vehicle, including: the person's location in proximity to the vehicle; the location of the keys; whether the person was a passenger in the vehicle; who owned the vehicle; and the vehicle's operability." *Fleck*, 777 N.W.2d at 236.

Here, the circumstances proved are consistent with a conclusion that appellant was in physical control of his vehicle. In *Fleck*, the supreme court determined that evidence that the appellant was "asleep behind the wheel of his vehicle, which was legally parked in an assigned space at the apartment building where he lived" with his keys in the console beside him could lead a jury to reasonably find that he "was in a position to exercise dominion or control over the vehicle and that he could, without too much difficulty, make the vehicle a source of danger." *Id.* at 235, 237. Here, appellant was not sitting behind the wheel when Deputy Williams located him, but the keys were in the truck's ignition and the vehicle was running. Appellant could have entered the vehicle and made it "a source of danger" without much difficulty. *See id.* Moreover, we have previously concluded that a driver was in physical control of a vehicle when the keys were in the ignition, the engine was running, and the driver was standing at the rear of the vehicle. *State v. Woodward*, 408 N.W.2d 927, 927-28 (Minn. App. 1987). As in *Woodward*, appellant "was fully capable of putting the car in motion." *Id.* at 928. And

9

the circumstances proved are consistent with appellant's physical control over the vehicle.

Appellant argues that there are four reasonable inferences inconsistent with his guilt: (1) the vehicle that Deputy Williams observed driving on the parallel road was not appellant's truck; (2) someone else was driving appellant's vehicle; (3) appellant drove his vehicle to the lumber yard before going to the Iron Horse; and (4) appellant and K.G. were walking to one of their houses. We are not persuaded that these inferences are reasonable. There is no evidence in the record shows that any other vehicle was being driven in the area. It is mere speculation that Deputy Williams saw a vehicle other than appellant's driving on the parallel road. The circumstances proved establish that the vehicle belonged to appellant and that K.G. was sitting in the passenger seat. There is no evidence that anyone else was in the area. It is therefore unreasonable to infer that either K.G. or some unknown person was driving appellant's vehicle (a claim that appellant did not make at trial). It is also unreasonable to infer that appellant chose to park his vehicle 100 yards away from the Iron Horse and walk in the freezing temperature when Deputy Williams testified that there was ample parking available near the bar. And Deputy Williams testified that appellant admitted driving "in the present time." Finally, it is unreasonable to infer that appellant and K.G. were walking home in freezing temperatures when they stopped at appellant's parked vehicle and started it while appellant walked to a soda machine.

Appellant's proffered inferences are based on pure conjecture, and conjecture is insufficient to overturn a conviction based on circumstantial proof. *See Al-Naseer*, 788

10

N.W.2d at 473. There is no reasonable inference inconsistent with appellant's guilt. *See id.* at 474. The proved circumstances in this case, taken on the whole, create only one reasonable inference—that appellant was in physical control of his vehicle. And the evidence is sufficient to support appellant's convictions under even the heightened standard applied to convictions based on circumstantial evidence.[3]

## II.

Next, appellant argues that the jury instructions for count one are erroneous because the district court (1) omitted the time requirement (that appellant must have an alcohol content of .08 or more *within two hours* of driving, operating, or physically controlling a vehicle); (2) rejected appellant's argument that physical control requires the accused to be in "close proximity," rather than mere "proximity," to the vehicle; and (3) included "confusing language about an inoperable vehicle, which was not at issue in this case." Appellant does not challenge the jury instructions for count two.

### *Jury instruction regarding the time requirement*

When instructing the jury, the district court explained that count one charged appellant with having an "alcohol concentration of [.08] or more within two hours of driving." But, in defining the charge and listing its elements, the district court failed to include the "within two hours" language. Instead of following the jury instruction guides

---

[3] Related to his arguments below, appellant also suggests that there was insufficient evidence to conclude that he had an alcohol concentration of .08 or more when driving, operating, or physically controlling a motor vehicle or within two hours of doing so. But appellant stipulated to the result of the breath test, which showed an alcohol concentration of .12 approximately one-and-one-half to two hours after Deputy Williams first encountered appellant. This stipulation sufficiently supports the element regarding appellant's alcohol concentration (concerning reliability of breath test).

11

pertaining to driving with an alcohol concentration of .08 or more within two hours of the time of driving, *see* 10A *Minnesota Practice*, CRIMJIG 29.11 (2006); CRIMJIG 29.12, the district court followed the jury instruction guides pertaining to driving while under the influence of alcohol, *see* 10A *Minnesota Practice*, CRIMJIG 29.01 (2006); CRIMJIG 29.02.

Because appellant failed to object to this jury instruction at trial, we review the jury instruction under the plain-error standard. *State v. Vance*, 734 N.W.2d 650, 655 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). To establish a plain error, there must be an error, that is plain, and that affects the substantial rights of a party. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). "If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.*

"An instruction is in error if it materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001). And "[a]n error is plain if it is clear or obvious." *Vance*, 734 N.W.2d at 658 (quotations omitted). "[T]he court's instructions must define the crime charged." *Kuhnau*, 622 N.W.2d at 556. Here, the district court's instructions defined driving, operating, or physically controlling a motor vehicle while under the influence, not with an alcohol concentration of .08 or more as measured within two hours. Therefore, the district court did not accurately define the crime charged. *See id.* This was plain error. *See Vance*, 734 N.W.2d at 658 ("[F]ailure to properly instruct the jury on all elements of the offense charged is plain error.").

12

"[A]n error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *Id.* at 656. "[W]e ask whether the error was prejudicial and affected the outcome of the case." *Id.* at 659. "The defendant bears the heavy burden of proving that the error was prejudicial." *State v. Milton*, 821 N.W.2d 789, 809 (Minn. 2012) (quotation omitted).

"When reviewing jury instructions, a reviewing court must assume that the jurors were intelligent and practical people." *State v. Weaver*, 386 N.W.2d 413, 418 (Minn. App. 1986) (quotation omitted), *review denied* (Minn. June 19, 1986). Here, an intelligent and practical person would know that an individual's alcohol concentration decreases over time after alcohol consumption has ended. Because appellant stipulated that he had an alcohol concentration of .12 as measured by breath testing approximately one-and-one-half to two hours after first encountering Deputy Williams, and because there is no evidence of alcohol consumption after Deputy Williams encountered appellant, an intelligent and practical person would conclude that appellant's alcohol concentration at the time he was driving, operating, or in physical control of his vehicle was *higher* than .12. If there was any confusion created by the erroneous instruction, it favored appellant.[4]

To convict appellant as instructed, the jury necessarily concluded that appellant had an alcohol concentration of .08 or more at the time that he drove, operated, or

---

[4] As noted, appellant stipulated to the alcohol concentration, and the focus of the trial was on whether appellant drove, operated, or was in physical control of the truck. There was no evidence or argument concerning the reliability of the breath test or of retrospective extrapolation from the breath test to appellant's alcohol concentration when Deputy Williams encountered him. *See, e.g.*, *State v. Shepard*, 481 N.W.2d 560, 563 (Minn. 1992).

physically controlled his vehicle, one-and-one-half to two hours before the breath test. There is no reasonable likelihood that, if properly instructed, the jury would not have convicted appellant of having an alcohol concentration of .08 or more within two hours of driving, as the breath test occurred within that two-hour timeframe.

Appellant has not met his burden to prove that the erroneous jury instruction regarding count one's timing requirement was prejudicial. Given his stipulation to the result of the breath test, there is no reasonable likelihood that the plainly erroneous jury instruction had a significant effect on the jury's verdict.

### Jury instruction regarding physical control

At the beginning of the trial, the district court granted the state's motion to include language from *Starfield* in the jury instruction regarding physical control:

> In considering whether or not the defendant was in physical control of the motor vehicle while under the influence of alcohol, you may consider defendant's location in or by the vehicle, the location of the ignition keys, whether the defendant had been a passenger in the vehicle before it came to rest, who owned the vehicle, the extent to which the vehicle was inoperable, and whether the vehicle if inoperable might have been rendered operable so as to be a danger to persons or property. You may consider these as well as any other facts or circumstances bearing on whether or not the defendant was then in physical control of a motor vehicle which was or reasonably could become a danger to persons or property while the defendant was under the influence of alcohol.

481 N.W.2d at 839. Appellant's attorney later asked the district court to include language from *Fleck*, explaining that "a person is in physical control of a vehicle if he has the means to initiate any movement of that vehicle, and he is in *close proximity* to the

14

operating controls of the vehicle." 777 N.W.2d at 236 (emphasis added). But the district court declined to include the word "close." The district court examined the definitions of both "close" and "proximate" and determined that "including close as a restrictor or modifier of proximity is redundant." The district court also observed that "close" was not used in *Starfield* and was therefore "an inappropriate modifier."

"The refusal to give a requested jury instruction lies within the discretion of the district court" and will not be reversed absent an abuse of discretion. *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996). The focus of the analysis is on whether the refusal resulted in error. *Kuhnau*, 622 N.W.2d at 555. "An instruction is in error if it materially misstates the law." *Id.* at 556.

"A party is entitled to an instruction on his theory of the case if there is evidence to support it, but the court need not give the requested instruction if it determines that the substance of the request is contained in the court's charge." *State v. Persitz*, 518 N.W.2d 843, 848 (Minn. 1994). Here, the jury was instructed that "a person is in physical control of a vehicle if he has the means to initiate any movement of that vehicle, and he is in *proximity* to the operating controls of the vehicle." (Emphasis added.) The jury was then instructed to consider several factors, including appellant's "location in or by the vehicle." *See Starfield*, 481 N.W.2d at 839. Because the jury instructions stressed the requirement that the state prove appellant's proximity and location, the substance of appellant's request was already contained in the jury instructions. And the district court was not required to instruct the jury regarding appellant's "close proximity" to the vehicle. *See Persitz*, 518 N.W.2d at 848.

15

The district court did not misstate the law.  It instructed the jury using the language approved by the supreme court in *Starfield*, *see* 481 N.W.2d at 839, and instructed the jury to consider appellant's proximity to his vehicle, *see Fleck*, 777 N.W.2d at 236.  The jury instruction correctly stated the applicable law.  In addition, under a harmless-error analysis, appellant cannot show that any error had a significant impact on the jury's verdict.  *See State v. Koppi*, 798 N.W.2d 358, 364 (Minn. 2011). The jury considered appellant's proximity to his vehicle (in addition to several other factors) and convicted him; there is no reason on this record to think that considering his "close proximity" to the vehicle would have resulted in a different verdict.

***Jury instruction regarding inoperable vehicles***

The district court included an instruction to the jury that it could consider "the extent to which the vehicle was inoperable, and whether the vehicle if inoperable might have been rendered operable so as to be a danger to persons or property."  *See Starfield*, 481 N.W.2d at 839.  Appellant argues that, because the operability of his vehicle was not in question, this language was unnecessary and distracted the jury from the issue of physical control.

Because appellant failed to object to the language regarding inoperable vehicles at trial, we review the instruction under the plain-error standard.  *See Vance*, 734 N.W.2d at 655.  The language regarding inoperable vehicles may not have been necessary in this case, but appellant fails to explain how the given instruction materially misstates the law. In *Starfield*, the supreme court stated that the relevant supplemental jury instruction "should be given if requested in cases where inoperability is involved."  481 N.W.2d at

16

839. But, in *Fleck,* the supreme court noted that the jury instruction was approved "for use in physical control cases," without limiting the instruction to cases where inoperability is involved. 777 N.W.2d at 236-37 n.1. Here, the district court followed *Fleck* in its direction that the jury instruction should be used "in physical control cases." *See id.* In doing so, the district court did not materially misstate the law. *See Kuhnau*, 622 N.W.2d at 556. And, because the district court followed the language in *Fleck*, any error was not clear or obvious. *See Vance*, 734 N.W.2d at 658. We conclude that the jury instruction, although perhaps unnecessary, was not plainly erroneous.

And even if the district court could be considered to have plainly erred concerning the inoperable-vehicle instruction, the instruction had no significant effect on the jury's verdict. *See id.* at 656. There is nothing in the record to suggest, nor any reason to believe, that the jury was confused by the language regarding inoperability or that the jury was more likely to convict appellant due to the inclusion of this language. Appellant has not met his heavy burden to prove that any error in including the inoperability language was prejudicial.

Because we determine that the evidence at trial was sufficient to support appellant's convictions, because the plainly erroneous instruction omitting the element of an excessive alcohol concentration "within two hours" had no significant effect on the jury's verdict, and because the remaining jury instructions for count one were not erroneous, we affirm.

**Affirmed.**

17