**In the Matter of the WELFARE OF A.A.E., Child.**

No. C6–97–1727.

Court of Appeals of Minnesota.

May 19, 1998.

Review Granted July 16, 1998.

John M. Stuart, State Public Defender, Charlann E. Winking, Assistant Public Defender, Minneapolis, for appellant A.A.E.

Hubert H. Humphrey III, Attorney General, St. Paul; and Alan L. Mitchell, St. Louis County Attorney, Mark M. Starr, Assistant County Attorney, Virginia, for State.

Considered and decided by SHUMAKER, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

In challenging his adjudication for reckless discharge of a firearm, appellant A.A.E. argues that accidentally shooting the victim, with no knowledge that firing the rifle would cause the victim harm, does not fall within the conduct prohibited by Minn.Stat. § 609.66, subd. 1a(a)(2) (1996). The trial court adjudicated A.A.E. delinquent for intentionally discharging a firearm under circumstances that endanger the safety of another. We affirm.

### FACTS

A.A.E. was charged with reckless discharge of a firearm in violation of Minn.Stat. § 609.66, subd. 1a(a)(2) (1996). The charge arose out of a hunting incident that occurred in November 1996, when A.A.E. went hunting with a family friend. The plan was for A.A.E. to wait in the "duck blind," which was several trees tied together, while the family friend drove the deer past the blind. A.A.E. got lost and ended up on a ridge that looked down into dense woods. He then climbed up a tree into a deer stand to wait.

A.A.E. testified that he saw something but was not sure what it was, so he waited to fire. Lieutenant Randy Lehman testified that when he asked A.A.E. whether he saw a deer, A.A.E. replied:

> Well, I saw a brown spot. And then there was a tree where I thought the head was, because I thought it was standing there. And there were sticks that I thought were horns. So, I decided to shoot one higher above to see if it was anything. So, I shot and then something moved. So, I shot three more times at it.

After the fourth shot, A.A.E. heard screaming. He immediately ran down the slope toward the screams. When A.A.E. reached the bottom of the hill, he noticed another deer stand. He climbed up the ladder and looked inside. He found the victim with her knee covered in blood. The victim was wearing an orange jacket, orange pants, and an orange hat. She told A.A.E. to get help. Soon thereafter, she was transported to St.

Mary's hospital in Duluth. She eventually had surgery at the Mayo Clinic.

Prior to the incident, A.A.E. had been hunting for approximately eight years. He also had attended a two-week firearms safety course.

The trial court found A.A.E. guilty of reckless discharge of a firearm. The trial court found that A.A.E. intentionally discharged his firearm under circumstances that endangered the safety of another person. The trial court then adjudicated A.A.E. delinquent and placed him on probation.

## ISSUE

Does Minn.Stat. § 609.66, subd. 1a(a)(2), require the actor to possess specific intent to endanger the safety of another?

## ANALYSIS

■ Interpreting a statute is a question of law that this court reviews de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985). In Minnesota, "the legislature has exclusive province to define by statute what acts shall constitute a crime * * *." *State v. Soto,* 378 N.W.2d 625, 627 (Minn.1985).

> The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.
>
> When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded in the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (1996).

■ Where the language of a statute is unambiguous, the rule of statutory construction directs this court to look to the "specific statutory language and be guided by its natural and most obvious meaning." *Heaslip v. Freeman,* 511 N.W.2d 21, 22 (Minn.App. 1994), *review denied* (Minn. Feb. 24, 1994). On the other hand, when the language of a statute is ambiguous, it is the role of this court to determine legislative intent. *Homart Dev. Co. v. County of Hennepin,* 538 N.W.2d 907, 911 (Minn.1995).

Minn.Stat. § 609.66, subd. 1a(a)(2) (1996), provides:

> (a) Whoever does any of the following is guilty of a felony:
>
> * * * *
>
> (2) intentionally discharges a firearm under circumstances that endanger the safety of another;

A.A.E. claims that his adjudication must be reversed because accidentally shooting the victim, with no knowledge that firing the rifle would cause her harm, does not fall within the conduct prohibited by the statute and that the trial court erred in finding that the specific intent requirement applied solely to the discharge of the firearm.

The state argues that this type of knowledge or fault is not required to find a violation of the statute because the only element of the statute that requires specific intent is discharging a firearm. We agree.

■ The statute requires specific intent as evidenced by the word "intentionally." The word "intentionally" modifies the verb "discharges" and thereby requires specific intent to do the act of discharging a firearm. *See* Minn.Stat. § 609.02, subd. 9(3) (1996) ("intentionally" means having purpose to do thing specified). But the word "intentionally" does not modify the remainder of the phrase, which describes the circumstance that must accompany the act of discharging the firearm.

The Model Penal Code, from which our statutory definitions of intent are borrowed, attempts to assign a required mental state to each objective element of the offense, whether conduct, result, or attendant circumstance. *See State v. Orsello,* 554 N.W.2d 70, 73 (Minn.1996) (noting Minnesota's statutory definitions of criminal intent are borrowed from Model Penal Code); Paul H. Robinson & Jane A. Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond,* 35 Stan. L.Rev. 681, 693–94 (1983) (drafters of Model Penal Code developed rules to indicate whether culpability term applies to one or all of objective elements of offense).

The requirement of specific intent to discharge a firearm does not imply a specific intent with regard to the attendant circumstance of endangering the safety of another. The legislature could have used other language tied to the offender's conduct that would have signified specific intent to endanger. *See Orsello*, 554 N.W.2d at 74 (noting phrase "in a manner that" as applied to harassing conduct indicated "intent requirement greater than simple intent").

But the legislature, in referring to "circumstances that endanger the safety of another" Minn.Stat. § 609.66, subd. 1a(a)(2), specified only the circumstances that must accompany the discharge of the firearm before it would become criminal. It would be an erroneous reading of the statute to conclude it requires specific intent with respect to the accompanying circumstance of endangering the safety of another. Legislative history also reflects no intent to require specific knowledge that firing a rifle would threaten another person with harm.[1]

## DECISION

Specific intent to "endanger the safety of another" is not required under Minn. Stat. §. 609.66, subd. 1a(a)(2). The clause "endanger the safety of another" is simply the attendant circumstance that must be present while intentionally discharging a firearm. A.A.E.'s disregard for what he was firing at created a danger to others that falls within the conduct prohibited by the statute. The trial court properly adjudicated A.A.E. delinquent for intentionally discharging a firearm under circumstances that endanger the safety of another.

**Affirmed.**

1. At a judiciary committee meeting on March 15, 1990, Senator McGowan moved to amend the statute to include the language, "under circumstances that" endanger the safety of another because "so as to" suggested to him that a person must intentionally endanger another. *Hearing on S.F. No. 2134 Before the Senate Judiciary Committee* (Mar. 15, 1990) (statement of Senator McGowan). Senator Peterson responded that he wanted the discharge of a firearm to be intentional, but the actor did not have to intend to endanger the safety of another person. *Id.* (statement of Senator Peterson). As a result, the language "so as to" was dropped and replaced with "under circumstances that." *Id.*