**STATE of Minnesota, Respondent,**

v.

**Robert Andrew Lee KELLEY,
Appellant.**

No. A06–408.

Court of Appeals of Minnesota.

June 26, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Steven P. Russett, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; WRIGHT, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

Appellant Robert Andrew Lee Kelley challenges his felony assault-in-the-fourth-degree conviction under Minn.Stat. § 609.2231, subd. 1 (2004), for spitting at a police officer, arguing that an independent physical assault is also required in order to constitute a felony offense. We affirm.

## FACTS

On March 18, 2005, a police officer transported appellant Robert Andrew Lee Kelley and another man to the detoxification unit because the men were noticeably and publicly intoxicated. Both detainees yelled profanities, insults, and threats of bodily injury at the officer while enroute to the jail. The men also spat at the officer, although neither successfully made contact.

The state charged appellant with felony fourth-degree assault in violation of Minn. Stat. § 609.2231, subd. 1 (2004). Prior to trial, appellant moved to dismiss for lack of probable cause, arguing that "spitting at a police officer, unless accompanied by a physical assault, does not constitute felony fourth-degree assault." The district court denied the motion, and appellant submitted his case for a bench trial on a stipulated record. The district court found appellant guilty and sentenced him to a stayed year-and-a-day prison term and three years' probation. This appeal follows.

## ISSUE

█ Does Minn.Stat. § 609.2231, subd. 1 (2004), require a physical assault in addition to "intentionally throw[ing] or otherwise transfer[ing] bodily fluids or feces at or onto the officer" to constitute a felony?

## ANALYSIS

█ Statutory construction is a question of law, which we review de novo. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996). "The object of statutory interpretation is to effectuate the intent of

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the legislature." *State v. Koenig*, 666 N.W.2d 366, 372 (Minn.2003) (citing Minn. Stat. § 645.16 (2002)). "The rules of statutory construction require that a statute's words and phrases are to be given their plain and ordinary meaning." *Id.* "When reviewing a statute, we assume that the legislature does not intend to violate the United States and Minnesota Constitutions or intend absurd or unreasonable results." *Id.* "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quotation and citation omitted). "When the language of the statute is ambiguous, the intent of the legislature controls." *Koenig*, 666 N.W.2d at 372. "A statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Am. Family Ins. Group*, 616 N.W.2d at 277 (quotation omitted).

■■■■■ We are "to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.* A statute defining a criminal offense must be strictly construed so that all reasonable doubt concerning legislative intent is resolved in favor of the defendant. *See State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002). But we need not adopt the narrowest possible construction. *State v. Zacher*, 504 N.W.2d 468, 473 (Minn.1993).

Here, the challenged statutory language states:

> Whoever physically assaults a peace officer ... when that officer is effecting a lawful arrest or executing any other duty imposed by law is guilty of a gross misdemeanor.... If the assault inflicts demonstrable bodily harm or *the person intentionally throws or otherwise transfers bodily fluids or feces at or onto the officer,* the person is guilty of a felony.

Minn.Stat. § 609.2231, subd. 1 (2004) (emphasis added).

Appellant presents a question of first impression. Appellant argues that the language is not ambiguous and that by the statute's plain language, a person must not only intentionally transfer bodily fluids or feces at or onto a peace officer, but also commit a separate physical assault against the officer to be guilty of felony fourth-degree assault. He asserts that the second sentence of the statute enhances the first by creating two conditions that increase a gross-misdemeanor "physical assault" to a felony: (1) if "the physical assault" referred to in the first sentence inflicts demonstrable bodily harm, or (2) if "the person" referenced in the second sentence not only commits "the physical assault" referred to in the first sentence but also "intentionally throws or otherwise transfers bodily fluids or feces at or onto the officer." Appellant argues that the second sentence provides "enhancement factors" and does not "creat[e] separate and distinct crimes." We disagree.

The evolution of the statutory language evinces the legislature's intent that the act of "intentionally throwing or otherwise transferring bodily fluids or feces at or onto the officer" is a felony and does not additionally require an independent physical assault. "Assault" is defined generally, and in the fifth-degree assault statute, as "(1) An act done with intent to cause fear in another of immediate bodily harm or death; or (2) The intentional infliction of or attempt to inflict bodily harm upon another." Minn.Stat. § 609.02, subd. 10 (2004); Minn.Stat. § 609.224, subd. 1 (2004) (defining misdemeanor assault). " 'Bodily harm' means physical pain or

injury, illness, or any impairment of physical condition." Minn.Stat. § 609.02, subd. 7 (2004).

Bodily fluids and feces can carry and transmit a variety of diseases. The transfer of bodily fluids or feces at or onto another can cause physical pain or injury, illness, or otherwise impair one's physical condition. Intentionally throwing or transferring bodily fluids or feces at or onto another person therefore satisfies the requirements of simple, fifth-degree assault. Minn.Stat. § 609.224, subd. 1.

In 1998, Minn.Stat. § 609.2231, subd. 1, providing elevated penalties for certain assaults committed against peace officers, read, in part, "[w]hoever assaults a peace officer ... when that officer is effecting a lawful arrest or executing any other duty imposed by law and inflicts demonstrable bodily harm is guilty of a felony." *Id.* (1998). Any lesser assault on a police officer would then fall under the fifth-degree misdemeanor-assault catch-all provision. *See* Minn.Stat. § 609.224, subd. 1 (1998). In 1998, the act of spitting at a police officer performing his duties would have been a fifth-degree assault.

In 2000, the fourth-degree assault statute was changed to read, *"Whoever physically assaults a peace officer ... when that officer is effecting a lawful arrest or executing any other duty imposed by law is guilty of a gross misdemeanor ....* If the assault inflicts demonstrable bodily harm, the person is guilty of a felony." Minn.Stat. § 609.2231, subd. 1 (2000) (emphasis added). By this amendment, the legislature elevated an assault on a police officer performing his duties that does not result in demonstrable bodily harm from a misdemeanor to a gross misdemeanor under the fourth-degree assault statute, removing it from the fifth-degree misdemeanor-assault statute. In 2000, the act of spitting at a police officer performing his duties would have been a gross misdemeanor under the fourth-degree assault statute rather than a misdemeanor fifth-degree assault.

In 2004, the legislature again amended the statute to its current form. These successive statutory amendments show that the legislature has progressively increased punishments for various assaults against peace officers over the past ten years. Appellant's argument that the legislature intended that a person not only transfer bodily fluids or feces at or onto a peace officer but also commit a separate physical assault on the officer runs counter to the legislature progressively increasing the severity of punishment for assaults against peace officers.

While we recognize that appellant's interpretation would increase the punishment for intentionally throwing or otherwise transferring bodily fluids or feces onto or at a peace officer if the perpetrator also committed an independent physical assault on the officer, we do not agree that the legislature intended only the compound conduct to be punishable as a felony.

Appellant argues that the difference in wording between subdivisions 1 and 3 of Minn.Stat. § 609.2231 is significant and supports his interpretation. We disagree. Subdivision 3 states:

Whoever commits either of the following acts against an employee of a correctional facility ... or against a probation officer or other qualified person employed in supervising offenders while the employee, officer, or person is engaged in the performance of a duty imposed by law, policy, or rule is guilty of a felony ...:

(1) assaults the employee and inflicts demonstrable bodily harm; or

(2) intentionally throws or otherwise transfers bodily fluids or feces at or onto the employee.

*Id.,* subd. 3 (2004). Appellant argues that because the legislature formatted the prohibition in subdivision 3 against transferring bodily fluids or feces at or onto someone differently than it formatted the subdivision 1 prohibition, the legislature must have intended a different result for the conduct under subdivision 1 than under subdivision 3.

The legislature added the specific felonious prohibition against transferring bodily fluids or feces at or onto a peace officer under subdivision 1 in 2004, after it prohibited the same conduct under subdivision 3, but chose to structure the statute differently than it did in subdivision 3. *Id.,* subds. 1, 3. In 2005, the legislature added subdivision 3a, which prohibits the same felonious conduct as subdivisions 1 and 3, but against certain secure-treatment-facility workers. *Id.,* subd. 3a (Supp.2005). The structure the legislature adopted in subdivision 3a mirrors the structure in subdivision 3, but not that in subdivision 1. *Id.,* subds. 1, 3, 3a. We acknowledge that the legislature could have adopted a similar structure in subdivision 1 as it had already crafted in subdivision 3. But unlike subdivisions 3 and 3a, subdivision 1 includes two categories of offenses, gross misdemeanors and felonies. The subdivision 1 structure must therefore necessarily be different from subdivisions 3 and 3a. The legislature is not required to use identical structure or language to effect the same or similar intent, and we conclude that its decision not to use parallel structure in this case is not dispositive.

We also note that subdivisions 3 and 3a prohibit as felonies the intentional transfer of bodily fluids or feces at or onto corrections employees, probation officers, and certain secure-treatment-facility workers.

Subdivisions 1, 3, and 3a prohibit similar conduct against various employees whose jobs require daily interaction with people in custody or under close supervision of the state. And subdivision 1 protects those who engage such people in the least-restrictive environment. The legislature has chosen to protect these public servants while conducting their business from having bodily fluids or feces intentionally thrown or otherwise transferred at or onto them by making such conduct a felony.

Reading and construing the statute as a harmonious whole, as we must, we see no indication that the legislature intended that the conduct proscribed under subdivision 1 toward peace officers carry a lesser penalty than the same conduct proscribed under subdivisions 3 or 3a toward corrections employees, probation officers, and certain secure-treatment-facility workers. We conclude that under Minn.Stat. § 609.2231, subd. 1, the conduct of spitting at a police officer is by itself a felony offense.

Appellant cites CRIMJIG 13.22 in support of his position. 10 *Minnesota Practice,* CRIMJIG 13.22 (Supp.2006). The CRIMJIG sets forth the elements of a fourth-degree assault against a peace officer, including that "the defendant [physically] assaulted ____." CRIMJIG 13.22 (footnote omitted). After setting out the elements, for use in appropriate cases—particularly when the facts are such that the jury could have found only a different form of physical assault—the CRIMJIG provides a format for the jury to decide whether the defendant "thr[e]w or otherwise transfer[red] bodily fluids or feces at or onto the officer" and whether the defendant "act[ed] intentionally in doing so." CRIMJIG 13.22. While we agree that in appropriate cases the CRIMJIG properly requires the jury to make additional findings that the defendant threw or otherwise

transferred bodily fluids or feces at or onto an officer and did so intentionally, we do not agree that the CRIMJIG therefore necessarily requires that the conduct be in addition to the finding that the defendant physically assaulted the officer in some other manner. Instead, we read the CRIMJIG to require confirmation in appropriate cases that the physical assault the jury found took the form of intentionally throwing or otherwise transferring bodily fluids or feces at or onto the officer. Moreover, we note that jury instruction guides merely provide guidelines and are not mandatory rules; jury instruction guides are instructive, but not precedential or binding on this court. Appellant's reliance on CRIMJIG 13.22 is unavailing.

▮ Finally, appellant asserts that if legislative history must be consulted to determine the legislature's intent, the statute is necessarily void for vagueness. We disagree. Courts rely on legislative history as only one tool to aid in discerning legislative intent. *See* Minn.Stat. § 645.16–.17 (2004); *see also State v. Richmond,* 730 N.W.2d 62 (Minn.App.2007) (interpreting statute to determine legislative intent). "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." *State v. Krawsky,* 426 N.W.2d 875, 878 (Minn.1988) (quotation omitted). Reliance on or reference to legislative history to aid a court's statutory interpretation does not necessarily render the scrutinized statute void for vagueness. Here, appellant does not allege that ordinary people cannot understand what conduct is prohibited nor that the statute encourages arbitrary or discriminatory enforcement. Appellant has not shown that the statute is void for vagueness.

## DECISION

We conclude that the statute's language is not ambiguous. Generally, physical assaults on peace officers are gross misdemeanors. But if the assault results in demonstrable bodily harm or if the assault is in the form of an intentional throwing or otherwise transferring of bodily fluids or feces at or onto an officer, then the assault is a felony. Even if the statute's language is ambiguous, legislative history supports our interpretation. The conduct of spitting at a police officer was correctly charged as a felony.

**Affirmed.**