**STATE of Minnesota, Respondent,**

v.

**Todd Bradley GUNDERSON, Appellant.**

No. A11–90.

Court of Appeals of Minnesota.

Feb. 6, 2012.

---

Lori Swanson, Attorney General, Kimberly Parker, Assistant Attorney General, St. Paul, MN, and Christopher J. Strandlie, Cass County Attorney, Walker, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; KALITOWSKI, Judge; and ROSS, Judge.

## OPINION

MINGE, Judge.

Appellant challenges his conviction for felony violation of a harassment restraining order (HRO), arguing that the district court erroneously instructed the jury regarding the elements of the crime, that the district court's refusal to appoint advisory counsel was reversible error, and that the evidence was insufficient to support a conviction. Because not instructing the jury that it must find a knowing violation of the HRO is plain error and because there is a reasonable likelihood that the error had a significant effect on the jury's decision, we reverse appellant's conviction and remand for a new trial.

## FACTS

Appellant Todd Gunderson's mother procured an HRO against him. The order uses a state court form with checked boxes and in relevant part provides that:

[Gunderson] shall not harass [his mother];

[Gunderson] shall have no contact with [his mother];

[Gunderson] shall stay away from where [his mother] resides: (address) [rural street number and name] Remer, Minnesota 56672.

The HRO was in effect from February 2009 until February 2011. A copy of the HRO was served on Gunderson. Gunderson's mother sought the HRO because he had a chemical dependency problem and was constantly seeking her financial assistance and because she was determined to avoid contact with him until he sought treatment.

On July 5, 2010, Gunderson was observed on the ten-acre parcel where his mother's house is located; in her detached garage, which various witnesses testified is between 20–100 feet from the house; and near a shed, which is also on the parcel. With his mother's permission, Gunderson owned the shed and kept most of his personal belongings in it. Gunderson's mother was not present on the July date. Be-

cause he had two convictions within the previous ten years for violating an order for protection (OFP), Gunderson was charged with gross-misdemeanor violation of an HRO under Minn.Stat. § 609.748, subd. 6(c) (2008), and felony violation of an HRO under Minn.Stat. § 609.748, subd. 6(d)(1) (2008).

Gunderson pleaded not guilty, moved to proceed pro se, and requested that his appointed public defender remain as advisory counsel. The district court allowed Gunderson to proceed pro se but refused to appoint the public defender as advisory counsel. On the day of trial, Gunderson stipulated that he had two prior convictions of qualified domestic-violence-related offenses. At trial, Gunderson admitted that on the July date he was on his mother's ten-acre parcel, in his mother's garage, and in the shed; that he knew of the HRO; and that he knew the HRO was in effect. He testified further that he was homeless, that he was on the property to pick up clothing from the shed, and that he believed the HRO only prevented him from contacting his mother and entering her residence and not from being on other parts of the ten-acre parcel, such as the shed and garage.

The district court instructed the jury that:.

The statutes of Minnesota provide that whoever violates a harassment restraining order and knows of the order is guilty of a crime.

The elements of that crime are as follows:

First, there was an existing court order restraining the Defendant from harassing [his mother].

Second, the Defendant violated a term or condition of the order.

Third, the Defendant knew of the order.

Fourth, the Defendant's act took place on or about July 5th, 2010, in Cass County.

Gunderson did not object to the jury instructions. The jury found Gunderson guilty, and this appeal follows.

## ISSUES

I. Did the district court plainly err in not properly instructing the jury regarding the knowledge element of a felony violation of an HRO?

II. Did the district court commit reversible error by denying Gunderson's request to appoint his public defender as advisory counsel?

III. Was the evidence sufficient to support a conviction of felony violation of an HRO?

## ANALYSIS

## I. JURY INSTRUCTIONS

 The first issue is whether the district court erroneously instructed the jury regarding the knowledge element of a felony violation of an HRO. A party's "failure to object [to the jury instructions at trial] will not preclude appellate review if the instructions constitute plain error affecting substantial rights or an error of fundamental law." *State v. Vance*, 734 N.W.2d 650, 655 (Minn.2007). Under the plain-error standard, we review the jury instructions to determine whether there was error, that was plain, and that affected Gunderson's substantial rights. *Id.* at 655–56. "If the three prongs of the plain error test are met, we may reverse if we conclude that reversal is required to ensure fairness and the integrity of the judicial proceedings." *Id.* at 656.

### A. Error

We must first determine whether the jury instructions were erroneous. The

statutory provision, including the elements of a violation of an HRO, reads as follows:

> (a) A person who violates a restraining order issued under this section is subject to the penalties provided in paragraphs (b) to (d).

> (b) Except as otherwise provided in paragraphs (c) and (d), when a temporary restraining order or a restraining order is granted under this section and the respondent *knows of* the order, violation of the order is a misdemeanor.

> (c) A person is guilty of a gross misdemeanor who *knowingly* violates the order within ten years of a previous qualified domestic violence-related offense conviction or adjudication of delinquency.

> (d) A person is guilty of a felony and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both, if the person *knowingly* violates the order:

> > (1) within ten years of the first of two or more previous qualified domestic violence-related offense convictions....

Minn.Stat. § 609.748, subd. 6 (emphasis added). Here, the district court instructed the jury that "[t]he statutes of Minnesota provide that whoever violates a harassment restraining order and knows of the order is guilty of a crime" and that the elements of the crime were: "First, there was an existing court order restraining the defendant from harassing [his mother]. Second, the defendant violated a term or condition of the order. Third, the defendant knew of the order. Fourth, [venue]."[1]

Gunderson argues that the district court instructed the jury as to the elements of a *misdemeanor*-level violation of an HRO and not as to the elements of a *felony-level* violation. Gunderson argues that a felony-level violation only occurs when an individual "knowingly violates" an HRO, whereas a misdemeanor-level violation occurs when an individual violates the order simply knowing of the existence of the order. Clearly, the district court's instructions to the jury directly reflect the statutory language used in describing a misdemeanor-level violation. The question, then, is whether the gross-misdemeanor/felony term "knowingly violates" requires more than proof that an individual knew of the existence of the order and in fact violated that order.

"Knowingly" is not defined in Minnesota's criminal code. But the Model Penal Code, from which our statutory definitions of intent are borrowed, states that:

> A person acts knowingly with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

Model Penal Code § 2.02(2)(b) (1985). Here, the statute's plain language uses the term "knowingly" as an adverb modifying the verb "violates." *See State v. Al-Naseer,* 734 N.W.2d 679, 684 (Minn.2007) (stating that appellate courts apply the plain meaning of a statute when the language is "clear and free of all ambiguity");

---

**1.** Because of Gunderson's prior-offense stipulation before trial, the question of whether he had two previous convictions for qualified domestic-violence-related offenses within the previous ten years was not submitted to the jury.

*The Chicago Manual of Style* § 5.165 (16th ed.2010) (stating that an "adverb should generally be placed as near as possible to the word. it is intended to modify" because it "makes the meaning clear"); *cf. In re Welfare of A.A.E.*, 579 N.W.2d 149, 151 (Minn.App.1998) (in interpreting the phrase "intentionally discharges," stating that "[t]he word 'intentionally' modifies the verb 'discharges' and thereby requires specific intent to do the act of discharging a firearm"), *aff'd,* 590 N.W.2d 773 (Minn, 1999). To violate an HRO is to engage in prohibited conduct. Therefore, applying the Model Penal Code's definition of "knowingly" to the plain language of section 609.748, subdivision 6, to convict Gunderson of a felony-level violation of an HRO, a jury must find that Gunderson was aware that entering his mother's ten-acre parcel, her detached garage, or the shed was prohibited.

The state argues that requiring the prosecution "to prove a defendant's subjective understanding of the language of an order" is unworkable and that a defendant's misreading or failure to read the HRO's language will become a defense. But, "[t]he proof of knowledge may be by circumstantial evidence," which would include evidence that an individual was served with an HRO and that the HRO's terms clearly and unambiguously prohibit certain conduct. *Al–Naseer*, 734 N.W.2d at 688. Moreover, many crimes require proof of a defendant's subjective knowledge, including felony obstruction of justice under Minn.Stat. § 609.50, subd. 2(1) (2010) (requiring proof that the person knew that his or her conduct "created a risk of death, substantial bodily harm, or serious property damage") and disorderly conduct under Minn.Stat. § 609.72, subd. 1 (2010) (requiring proof that a person knew that his or her conduct would "alarm, anger, or disturb others").

Using the plain language of the statute, the term "knowingly" should have been included as an element of the felony HRO violation with which Gunderson was charged. Therefore, the district court's instructions to the jury, which ignored the term entirely, were in error.

## B. Plain Error

■ We next determine whether the district court's error was plain. An error is plain if it is "clear" or "obvious," meaning that it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey,* 721 N.W.2d 294, 302 (Minn.2006) (quotations omitted). "[F]ailure to properly instruct the jury on all elements of the offense charged is plain error." *Vance,* 734 N.W.2d at 658; *see also Screws v. United States,* 325 U.S. 91, 106–07, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945) (concluding that plain error occurred when district court gave proper instruction regarding intent but failed to further instruct "that it was not sufficient that petitioners had a generally bad purpose").

The state argues that the error could not have been plain because this court, in one published decision and several unpublished decisions, has previously upheld jury instructions such as those provided by the district court here. In *State v. Colvin,* 629 N.W.2d 135, 138 (Minn.App.2001), *rev'd,* 645 N.W.2d 449 (Minn.2002), which indirectly addressed the elements of felony violation of an OFP, we stated that "[t]he state is required to prove the existence, and defendant's awareness, of the order for protection, in addition to a violation of the order." However, the supreme court, in reversing our *Colvin* decision, rejected this court's overall reasoning. *State v. Colvin,* 645 N.W.2d 449, 454 (Minn.2002). Moreover, we note that "[u]npublished opinions of the Court of Appeals are not precedential." Minn.Stat. § 480A.08,

subd. 3 (2010); *see also Vlahos v. R & I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n. 3 (Minn.2004) ("Unpublished decisions should not be cited by the district courts as binding precedent."). Reliance on *Colvin* or the unpublished opinions of this court does not automatically avoid plain error. We recognize the anomaly of holding a district court to a higher standard than our own prior interpretation of the law; however, the task we face in reviewing the challenged decision on appeal is whether, given the statutory language, it is clear appellant's conviction is flawed, not whether the error was due to a prior unpublished opinion.

 The state argues further that the error could not have been plain because the district court instructed the jury pursuant to the model jury instructions contained in 10 *Minnesota Practice*, CRIMJIG 13.62–.63 (2006). In this handbook of instructions, the only difference between the elements of a misdemeanor-level and felony-level violation of an HRO is an additional question regarding the number of defendant's previous qualified convictions. CRIMJIG 13.62–.63. However, the CRIMJIGs are "not precedential or binding." *State v. Kelley*, 734 N.W.2d 689, 695 (Minn.App.2007). When the plain language of the statute conflicts with the CRIMJIG, the district court is expected to depart from the CRIMJIG and properly instruct the jury regarding the elements of the crime. *See State v. Koppi*, 798 N.W.2d 358, 364–66 (Minn.2011) (concluding that district court erred in using the CRIMJIG because the instructions deviated substantially from the applicable law). An instruction is not necessarily insulated from being plain error because it follows the applicable CRIMJIG. Again, we recognize the anomaly of holding the district court to this standard; however, again we are focused on whether it is "plain" or clear that an error occurred.

Here, the district court failed to apply the plain language of section 609.748, subdivision 6, to the "knowingly" element of the charged offense. The plain language states that a felony-level violation occurs when an individual "knowingly violates" the HRO, whereas a misdemeanor-level violation of an HRO occurs when an individual simply knows of and violates the HRO, thereby indicating the legislature's decision to assign a heightened standard to a felony-level violation. *See Harrison ex rel. Harrison v. Harrison*, 733 N.W.2d 451, 455 (Minn.2007) (stating that the legislature's use of different terms indicates the intent to assign different meanings). Because the district court's instructions did not follow the clear statutory language, we conclude that the error was plain.

C. Affected Substantial Rights

 We must next determine whether the district court's plainly erroneous jury instructions affected Gunderson's substantial rights. "[A]n error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *Vance*, 734 N.W.2d at 656. The omission of an element of a crime from the instructions to the jury has a significant effect on the verdict when the defendant submits evidence that tends to negate that element, and "there is a reasonable likelihood that a properly instructed jury could have accepted the defendant's version of events." *Id.* at 661.

Here, Gunderson vigorously disputed at trial that he knew the HRO prohibited him from simply entering the portions of his mother's ten-acre parcel that included the garage and shed. He testified that he believed the HRO prohibited him only from entering his mother's residence or

having contact with his mother. His mother testified that she procured the HRO to prevent Gunderson from "coming to my house asking for money"; that she had given Gunderson the shed on her property to store his personal items in; and that she had initiated contact with Gunderson several times since she procured the HRO. In addition, the state's witnesses testified that Gunderson made no effort to hide or run away when observed at the garage and shed but instead approached them and engaged in casual conversation. Moreover, during closing argument, Gunderson read definitions for "away" and "residence" from a dictionary in his continued attempt to convince the jury of his position.

In contrast, the state only offered Gunderson's admission to having knowledge of the existence of the HRO and its terms. But, because the district court's instructions to the jury were erroneous, the jury had no opportunity to weigh the conflicting evidence or make a credibility determination on the issue of whether he knowingly violated the HRO. Considering the ambiguity of the HRO (which ordered that Gunderson "stay away from" where Gunderson's mother resides and listed his mother's mailing address as her residence without providing a route for Gunderson to access his shed containing most, if not all, of his personal belongings), a reasonable jury could accept Gunderson's argument that he did not knowingly violate the order.

Because whether Gunderson knew that his conduct was prohibited was closely contested by both parties, because Gunderson submitted evidence that tended to negate that element of the crime, and because there is a reasonable likelihood that a

properly instructed jury could have accepted Gunderson's argument, we conclude that the error had a significant effect on the jury's verdict and affected Gunderson's substantial rights.

**D. Ensuring the Fairness and Integrity of the Judicial Proceedings**

Finally, we address whether a new trial is required to ensure the fairness and integrity of the judicial proceedings. "Fairness requires that [the defendant] be given an opportunity to present his account of the facts to a jury under the proper instructions." *State v. Baird*, 654 N.W.2d 105, 114 (Minn.2002). "[T]he fairness and integrity of the judicial proceedings are called into question by the erroneous instructions and the verdict based on those instructions" when the jury may not have considered a disputed element of the crime. *Vance*, 734 N.W.2d at 662.

Here, the district court's error prevented the jury from weighing the competing evidence and considering a disputed element of the crime. Because the erroneous instructions allowed the jury to ignore a significant portion of Gunderson's argument, we conclude that reversal of Gunderson's conviction and remand for a new trial is necessary.[2]

**II. ADVISORY COUNSEL**

 The second issue is whether the district court committed reversible error by refusing to appoint Gunderson's public defender as advisory counsel. A district court "may appoint advisory counsel to assist a defendant who voluntarily and intelligently waives the right to counsel." Minn. R.Crim. P. 5.04, subd. 2. We review a district court's decision regarding

---

2. Because the record on appeal does not disclose the everyday use of the garage, its location relative to the residence, the location of the driveway, or the nature of the topography and vegetation; we do not foreclose consideration of the issue of whether the garage is functionally and logically part of the residence in any retrial.

the appointment of advisory counsel for an abuse of discretion. *State v. Jones*, 772 N.W.2d 496, 507 (Minn.2009).

Here, the district court denied Gunderson's request to appoint his public defender as advisory counsel based primarily on the belief that the law prohibited it from doing so. Minn.Stat. § 611.17(b)(4) (2008) does prohibit the district court from appointing a public defender as advisory counsel; however, the supreme court has stated that the appointment of advisory counsel "is a procedural matter for judicial determination" and that the legislature lacks the authority to statutorily limit the district court's options for such appointment. *State v. Clark*, 722 N.W.2d 460, 466 (Minn.2006). Therefore, the district court does have the authority to appoint a public defender as advisory counsel, and the district court's reliance on section 611.17 was erroneous. On remand, if Gunderson again proceeds pro se and requests advisory counsel, we direct the district court to base its decision on factors other than section 611.17. *See Clark*, 722 N.W.2d at 468 (listing as factors "ensuring the fairness of the criminal justice process, promoting judicial efficiency, and preserving the appearance of judicial impartiality").

### III. SUFFICIENCY OF THE EVIDENCE

The third issue is whether there was sufficient evidence for the jury to convict Gunderson of felony violation of an HRO. In considering a claim of insufficient evidence, we conduct "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We will not disturb the verdict if the jury could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004).

As previously discussed, to convict, the state had to produce evidence that there was an existing HRO prohibiting Gunderson from entering his mother's entire ten-acre parcel or at least the garage, that Gunderson knew, or clearly should have known, that he was prohibited from entering his mother's entire ten-acre parcel or at least the garage, that Gunderson intentionally entered this parcel or at least the garage, and that Gunderson did so within ten years of the first of two prior convictions for qualified domestic-violence-related offenses. Gunderson admitted to intentionally entering his mother's ten-acre parcel including the garage, and to doing so within ten years of the first of two prior qualifying convictions. The only issues in dispute at trial were whether the HRO prohibited Gunderson from entering any portion of his mother's ten-acre parcel or at least the garage, and whether Gunderson knew, or clearly should have known, that limitation was included in the HRO.

The state argued that the HRO's plain language, which ordered Gunderson to "stay away from where [his mother] resides: [mother's mailing address]," prohibited him from entering his mother's detached garage, and that anyone with common sense would understand that a detached garage is part of a residence. Gunderson argued that "resides" incorporated only his mother's actual dwelling and not the entire ten-acre parcel or even the garage or shed. We note the record contains conflicting testimony about the distance of the garage and shed from the dwelling. Furthermore, although Gunderson admits that he was served with the HRO and that he read its terms, he testified that he understood the HRO to only prohibit him from contacting his mother

and entering her home, not the ten-acre parcel more generally, the detached garage, or the shed. We note that the ongoing presence of the storage shed containing Gunderson's belongings on the ten-acre parcel and the problem of whether the HRO extended to the shed—and if not, how Gunderson was supposed to access his shed given the HRO—are difficult for this court to reconcile. However, it is the jury's duty to weigh conflicting evidence and to make credibility determinations. Here, the conflicting evidence offered by the parties could reasonably support a jury's decision in either direction. Therefore, although we conclude that the record may contain sufficient evidence to sustain the conviction, because the jury was denied the opportunity to weigh the conflicting evidence based on the proper instruction, we reverse and remand for a new trial.

## DECISION

We conclude that the district court committed plain error when it failed to properly instruct the jury that, to convict, it must find not only that Gunderson knew of the OFP but also that in entering his mother's ten-acre parcel, her detached garage, or his shed, he knowingly violated the prohibition in the OFP. Because the erroneous instruction affected Gunderson's substantial rights by impacting the outcome of the trial, we reverse and remand for a new trial.[3] We further conclude there is adequate evidence to conduct a trial with the expanded instruction, and that in conduct-

ing a new trial, the district court has discretion to appoint advisory counsel.

**Reversed and remanded.**

---

**3.** Because we reverse and remand on the jury-instruction issue, we decline to address Gunderson's argument that the district court erred when accepting the stipulation to his prior convictions without securing a formal waiver of his right to a jury trial on that element of felony violation of an HRO. However, we note that the Minnesota Supreme Court recently held that failure to obtain such a waiver is not a structural error but rather plain error and will not be set aside on appeal unless the failure affected the substantive rights of the accused. *State v. Kuhlmann*, 806 N.W.2d 844 (Minn.2011).