*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A12-2135**

State of Minnesota,
Respondent,

vs.

Dean James Roehler,
Appellant.

**Filed October 6, 2014
Reversed and remanded
Stauber, Judge**

Hubbard County District Court
File No. 29-CR-11-1414

Lori A. Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, Minnesota; and

Donovan Dearstyne, Hubbard County Attorney, Park Rapids, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from his conviction on multiple counts of criminal vehicular homicide, criminal vehicular operation, and driving while intoxicated (DWI), appellant argues that

(1) blood-test evidence taken from appellant violated the warrant requirement and should have been suppressed at trial and (2) appellant received ineffective assistance of counsel when his trial attorney failed to object to the introduction of his medical records on the basis of physician-patient privilege.  We reverse and remand for further proceedings.

**FACTS**

Just before 5:30 p.m. on July 14, 2011, appellant Dean Roehler was involved in a head-on car accident on Highway 34, approximately five miles east of Park Rapids, Minnesota.  Appellant's car crossed over the centerline of the highway and collided with a van traveling in the opposite direction.  The driver of the van was killed instantly, and the van's other two passengers, the driver's daughter-in-law and grandchild, were injured.  Appellant was also seriously injured.

When Minnesota State Trooper Nick Tabbert arrived at the scene of the accident, he found appellant unconscious but breathing and assisted emergency personnel in extracting appellant from his vehicle, which took approximately 45 minutes.  Appellant was taken by ambulance to the nearest airport, which was approximately five miles away, and was airlifted to Essentia Health Hospital in Fargo, North Dakota.  While in the ambulance, Tabbert observed an odor of alcohol coming from appellant.  Tabbert requested that a flight nurse draw a sample of appellant's blood for alcohol-concentration testing.  Tabbert did not have a warrant authorizing the blood draw.  At approximately 6:31 p.m., blood was taken through an intravenous (IV) line that was also being used to treat appellant with fluids, and consequently, the sample was diluted.  For this reason,

2

Tabbert contacted Minnesota State Trooper Mark Herbranson to follow appellant to the Fargo hospital and obtain a second blood-alcohol-concentration test from appellant.

After arriving at the hospital, appellant's blood was drawn for medical purposes at approximately 8:07 p.m. The police subsequently obtained a warrant for this blood draw, which showed that appellant had a blood-alcohol concentration (BAC) of .086. A third blood draw was taken at approximately 8:58 p.m. at the direction of Herbranson while appellant was in radiology shortly before going into surgery. Herbranson did not obtain a warrant for this blood draw. Appellant regained consciousness two days later and remained in the hospital for 23 days.

Appellant was charged with eleven criminal counts, including three counts of criminal vehicular homicide, six counts of criminal vehicular operation, and two counts of DWI. At trial, Donna Zittel, a forensic toxicology specialist at the Bureau of Criminal Apprehension (BCA) crime lab, testified that both the 6:31 p.m. blood draw and the 8:58 p.m. blood draw showed a BAC of .05., but she also testified that because the 6:31 p.m. blood draw may have been diluted, the sample was not valid for use in reverse extrapolation to determine appellant's BAC at the time of the accident. Zittel's report based on the 8:58 p.m. blood draw was admitted into evidence and indicated that appellant likely had a BAC of between .08 and .14 at the time of the accident. Zittel also testified that the rate at which alcohol diminishes in the blood is not affected by drugs or trauma.

Two witnesses testified that they smelled alcohol on appellant following the accident. Minnesota State Trooper Dion Pederson, an officer trained in accident

reconstruction, testified that, based on the evidence at the scene, the accident was caused by human error and not by a mechanical defect or other cause.

Appellant testified that on the day of the accident he consumed one beer in the morning and that he had two more beers later in the day; he stated that he had, at most, three beers that day. He also testified that he began driving around 5:00 p.m., and the last thing he remembered was approaching a stop sign at the intersection of Highway 34 and Aw-Gwah-Ching Road. He next remembered waking up in the hospital two days later.

Following the trial, the jury convicted appellant on all eleven counts. The district court sentenced him on four of the eleven convictions. Appellant filed an appeal to this court on November 30, 2012, but later requested a stay of the appeal following the United States Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), issued on April 17, 2013.[1] On July 2, 2013, appellant filed a petition for postconviction relief in district court, asking for a new trial, challenging admission of the BAC test results into evidence, and claiming ineffective assistance of counsel because of counsel's failure to object to the admission of his medical records on the basis of physician-patient privilege. Following an evidentiary hearing, the district court denied appellant's request for postconviction relief. This appeal followed.

---

[1] The principles enunciated in *McNeely* apply to this appeal. The question of retroactive effect arises when a new rule of criminal procedure is announced; a person whose appeal is already final may not benefit from the new rule. *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013). This appeal was still pending when *McNeely* was issued and was therefore not final.

**D E C I S I O N**

"When a defendant initially files a direct appeal and then moves for a stay to pursue postconviction relief, we review the postconviction court's decisions using the same standard that we apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012).

**I.     Exigent circumstances exception to the warrant requirement**

The United States and Minnesota Constitutions protect the right of the people to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Taking a blood sample constitutes a "search" under the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). "Such an invasion of bodily integrity implicates an individual's most personal and deep-rooted expectations of privacy." *McNeely*, 133 S. Ct. at 1558 (quotation omitted). Ordinarily, a warrant is required for any intrusion into the human body. *Id.* A warrantless search is per se unreasonable "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967). In general, evidence obtained in violation of the constitution must be suppressed. *See State v. Jackson*, 742 N.W.2d 163, 177-78 (Minn. 2007) (suppressing evidence obtained during an unconstitutional nighttime search).

"One well-recognized exception . . . applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 133 S. Ct. at 1558 (quoting *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011)). Courts look to the totality of the

5

circumstances of each case in order to determine whether a law-enforcement officer faced an emergency that justified acting without a warrant. *Id.* at 1559. A warrant is not required where an officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber v. California*, 384 U.S. 757, 770, 86 S. Ct. 1826, 1836 (1966) (quotation omitted). But,

> [t]he context of blood testing is different in critical respects from other destruction-of-evidence cases in which police are truly confronted with a "now or never" situation. In contrast to, for example, circumstances in which the suspect has control over easily disposable evidence, BAC evidence from a drunk-driving suspect naturally dissipates over time in a gradual and relatively predictable manner.

*McNeely*, 133 S. Ct. at 1561 (citations omitted). The Supreme Court noted the relative ease with which a warrant may now be obtained, through "telephonic or radio communication, electronic communication such as e-mail, and video conferencing." *Id.* at 1562. The Supreme Court also pointed out that during transport of the suspect, police can initiate the warrant application procedure in motion. *Id.* at 1561.

The Supreme Court previously addressed the exigency created by an accident involving injuries in which there was cause to believe that the driver was intoxicated in *Schmerber*. 384 U.S. at 770-72, 86 S. Ct. at 1835-36. There, a suspect was arrested at a hospital where he was being treated for injuries following a single-car crash that injured the suspect's passenger. *Id.* at 758, 86 S. Ct. at 1829 n.2. The suspect was compelled to submit to a BAC test, and the test indicated that he was intoxicated. *Id.* at 758-59, 86 S. Ct. at 1829. The Supreme Court concluded that, "[g]iven these special facts," the delay

6

necessary to obtain a warrant threatened the destruction of the BAC evidence. *Id.* at 770-71, 86 S. Ct. at 1835-36. The Supreme Court stated that, "[p]articularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." *Id.* at 770-71, 86 S. Ct. at 1836. The Supreme Court confirmed the continuing validity of *Schmerber* in its *McNeely* decision. 133 S. Ct. at 1559.

The blood draw at 6:31 p.m. may have been taken under exigent circumstances: given the uncertainty and chaos at the accident scene and the necessity of transporting appellant to an out-of-state hospital, the totality of the circumstances supports a finding of exigency. The 8:58 p.m. blood draw does not present the same exigencies. This test was taken without a warrant nearly one-and-a-half hours after Hebranson arrived at the Fargo, North Dakota, hospital and nearly three hours after the accident. While the warrant process may be more complicated when it involves interstate law enforcement, it is not impossible in view of modern technology.

In *McNeely*, the Supreme Court stated that the

> proposed *per se* rule [that dissipation of alcohol creates an exigent circumstance] . . . fails to account for advances in the 47 years since *Schmerber* was decided that allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple.

*Id.* at 1561-62. Applying these principles, although the 6:31 p.m. draw may support a finding of exigent circumstances, the 8:58 p.m. draw does not. The state offered no explanation why it could not obtain a warrant before conducting the later blood draw.

7

We therefore conclude that the district court erred by refusing to suppress the results of the 8:58 p.m. blood draw because the state failed to show under the totality of the circumstances that exigent circumstances prevented the police from obtaining a warrant. Further, the record reflects that the 6:31 p.m. blood draw was tainted and was used at trial only to confirm the results of the expert's extrapolation from the 8:58 p.m. draw results. Thus, the evidence at trial is insufficient to sustain appellant's convictions based on having a BAC of more than .08.

Finally, we conclude that the erroneous admission of the 8:58 p.m. blood draw results was not harmless. "When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) (citation and quotations omitted). The state's case rested heavily on the expert's extrapolation from the 8:58 p.m. blood draw and admission of that evidence was highly prejudicial to appellant. Further, the BAC evidence may have contributed to the jury's verdict on the charges based on gross negligence rather than on BAC; a jury could find that test results reflecting intoxication are persuasive evidence of gross negligence. Because of this, we cannot conclude that introduction of the BAC evidence was harmless beyond a reasonable doubt, and we must reverse and remand for a new trial.

Because we reverse and remand on the admission of the warrantless BAC test results, we decline to address appellant's ineffective-assistance-of-counsel argument or

8

the issue of whether the blood drawn for medical purposes was subject to physician-patient privilege.  *See State v. Gunderson*, 812 N.W.2d 156, 164, n. 3 (Minn. App. 2012).

**Reversed and remanded.**