*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1269**

State of Minnesota,
Respondent,

vs.

Erick Larkins,
Appellant.

**Filed August 29, 2016
Affirmed in part, reversed in part, and remanded
Stauber, Judge**

Washington County District Court
File Nos. 82-CR-14-2829; 82-CV-14-4599

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Pete Orput, Washington County Attorney, Nicholas A. Hydukovich, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Reyes, Judge; and Toussaint, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant challenges his conviction of aiding and abetting first-degree aggravated robbery, seeking (1) reversal of his conviction because of an erroneous jury instruction; (2) reversal of the district court's restitution order; and (3) vacation of a no-contact order that was imposed as part of his sentence. We reverse and remand for the district court to vacate the no-contact portion of appellant's sentence, but otherwise affirm in all respects.

**FACTS**

On the morning of June 21, 2014, Thomas Jones entered a jewelry store in Woodbury and approached an employee, S.J. As Jones walked into the store, S.J. saw a police officer drive past and look into the store. Jones pulled out a revolver, pointed it at S.J., and ordered S.J. to open a jewelry showcase, which he did. Jones then gave S.J. a paper bag and ordered him to fill it with jewelry. While S.J. complied, another employee came into the store but turned around and ran out. Jones then set the bag down and ordered S.J. to get down on his knees. S.J. then heard Jones say, "uh-oh," which S.J. interpreted to mean that Jones was aware that police had discovered the robbery in progress. Attempting to offer Jones a way out, S.J. told Jones that the store had a back exit. Jones left the bag on the counter and walked toward the back of the store. Moments later, S.J. heard a gunshot. Police later discovered Jones dead from a gunshot wound; his revolver was underneath his body. The medical examiner determined that Jones' death was a suicide.

Appellant Erick Larkins drove Jones to the robbery site from Minneapolis and parked at the opposite end of the strip mall from the jewelry store. Before the robbery, Larkins walked past the jewelry store and looked inside, then went inside the nutrition store next door but bought nothing. He then walked past the jewelry store again and looked inside. The employee of the nutrition store testified that Larkins smelled of marijuana and that his short visit seemed to be pretextual.

Larkins was arrested and tried before a jury on a charge of aiding and abetting aggravated robbery. At Larkins' trial, the state offered evidence implicating Larkins in the robbery, including phone records showing that Larkins contacted Jones via cellphone on the morning of the robbery and attempted to contact him three times immediately after the robbery; cellphone records showing that Larkins remained in Woodbury after the robbery despite claiming that he drove back to Minneapolis after Jones purportedly paid him $15 to give him a ride to Woodbury; physical casing conduct at the jewelry store by Larkins and Jones before the date of the robbery; Larkins' conduct of breaking into Jones' apartment on the afternoon of the robbery and leaving with unknown items; and other evidence circumstantially linking Larkins to Jones around the time of the robbery.

While instructing the jury, the district court, without objection, gave the following instruction defining aiding and abetting:

> The [d]efendant is guilty of a crime, however, only if the other person commits a crime. The [d]efendant is not liable criminally for aiding, advising, hiring, counseling, conspiring, or otherwise procuring the commission of a crime unless some crime, *including an attempt*, is actually committed.

(emphasis added).

3

The jury found Larkins guilty, and the district court imposed a 112-month sentence, to be followed by issuance of a no-contact order upon Larkins' release from prison. The district court also issued a restitution order that required Larkins to pay $4,250 to the victim S.J. This appeal followed.

## DECISION

*Jury Instructions.* Appellant argues that the district court committed reversible error by including a reference to attempted robbery within its jury instructions defining the offense of aiding and abetting. "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2014). Jones' conduct could constitute attempted aggravated robbery if Jones merely did an "act which [was] a substantial step toward . . . the commission of the crime," Minn. Stat. § 609.17 (2014), but the aggravated robbery could constitute a completed offense if Jones actually took personal property from another while armed. Minn. Stat. §§ 609.24 (2014) (defining simple robbery), 609.245, subd. 1 (2014) (defining first-degree aggravated robbery). Because appellant could be convicted of aiding and abetting only if there was an underlying completed robbery offense committed by Jones, appellant argues that it was error for the district court to include the reference to an attempted offense in its instructions.

Appellant did not object at the time of trial, and this court therefore reviews the unobjected-to instruction for plain error. *State v. Gunderson*, 812 N.W.2d 156, 159 (Minn. App. 2012). "Under the plain-error standard, [an appellate court] review[s] the

4

jury instructions to determine whether there was error, that was plain, and that affected [the defendant's] substantial rights." *Id*. "If the three prongs of the plain error test are met, [the appellate court] may reverse if [it] conclude[s] that reversal is required to ensure fairness and the integrity of the judicial proceedings." *State v. Vance*, 734 N.W.2d 650, 656 (Minn. 2007).

We agree with appellant that the instruction was erroneous, and we must next determine if the error was plain. An error is plain if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Respondent argues that the instruction given was consistent with the model instructions set forth in 10 *Minnesota Practice*, CRIMJIG 4.01 (2014), and therefore, although not completely accurate, was not plainly erroneous. But there is a fundamental difference between a completed-robbery offense and an attempted-robbery offense, which could have made the instruction inaccurate and confusing to a jury. "When the plain language of [a] statute conflicts with the CRIMJIG, the district court is expected to depart from the CRIMJIG and properly instruct the jury regarding the elements of the crime." *Gunderson*, 812 N.W.2d at 162. Because the district court did not follow the pertinent statute in defining the applicable robbery offense as it related to the facts established at trial, the error was plain.

We next consider whether the district court's erroneous instruction affected appellant's substantial rights. "[A]n error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *Vance*, 734 N.W.2d at 656; *see Ramey*, 721 N.W.2d at 302 (stating that the defendant bears the

5

"heavy" burden of persuasion on the third prong of the plain-error test).  Viewing the instructions as a whole, we conclude that they were substantially correct and clearly included the requirement that appellant aided and abetted a completed robbery.  The erroneous reference to "attempt" in the provision that defined aiding and abetting was isolated and minor in relation to the instructions as a whole.

Further, because Jones' aggravated robbery was captured on a videotape that was admitted at trial and was witnessed by several individuals, there was strong evidence that a completed robbery occurred.  Jones walked into the jewelry store, pointed a gun at an employee, ordered the employee to fill a bag with jewelry, held the bag containing the jewelry, setting the bag down only after the police were about to apprehend him.  While appellant argues that Jones held the bag filled with jewelry for only about five seconds, this duration was sufficient to prove that Jones "took" the property, which is all that is required to establish the "taking" element of the offense.  *See* Minn. Stat. § 609.24 (including within the definition of simple robbery the element of unlawful "taking or carrying away" of personal property of another); *State v. Burrell*, 506 N.W.2d 34, 36 (Minn. App. 1993), *review denied* (Minn. Oct. 19, 1993) (affirming robbery conviction that "took less than a minute" and involved robber carrying away cigarettes from a convenience store); *cf. U.S. v. Wright*, 246 F.3d 1123, 1126 (8th Cir. 2001) (defining "taking," for purposes of federal carjacking statute, to include "acquisition by the robber of possession, dominion or control of the property for some period of time").  Moreover, evidence of appellant's role in aiding and abetting the robbery was strong.  His conduct

6

before, during, and after the robbery clearly demonstrates his connection to Jones's crime.

For these reasons, appellant has failed to meet his "heavy" burden to establish a basis for reversal of his conviction because of error in the jury instructions. The error of embedding the attempt language in the instructions had no significant effect on the jury verdict or on appellant's substantial rights.

*Restitution.* Appellant next argues that the district court erroneously issued its order for restitution before the 30-day statutory period for a challenge to the requested restitution had expired. Upon a proper request for restitution made under Minn. Stat. § 611A.04, subd. 1(a)-(b)(2014) and sufficient evidence to support granting the request, a district court may order an offender to pay restitution to crime victims for "out-of-pocket losses resulting from the crime." *Id*. at subd. 1(a). The restitution statute contemplates issuance of a restitution order either at sentencing or after sentencing, and the district court may reserve the issue of restitution if evidence to support the restitution claim is not received before sentencing. *Id*.

At sentencing on May 11, 2015, the district court granted the state's request to continue the issue of restitution for 60 days and informed appellant that if he wished to challenge the claimed amount of restitution, he could do so by motion. Following sentencing, Johnson Jewelers filed an affidavit for restitution on June 12, 2015 that claimed $1,000 for an insurance deductible, $550 for an employee's therapy, $900 for a "psychological resource group," and $1,800 for "paid leave of absence." On June 18, 2015, the Washington County Court Administrator notified appellant that an affidavit for

7

restitution had been filed. In a restitution order filed on July 7, 2015, the district court granted the state's $4,250 restitution request. Without challenging the restitution requested, appellant filed a notice of appeal to this court on August 7, 2015.

Appellant now argues that the district court prematurely issued the order for restitution before the 30-day period to challenge the restitution request had expired. He claims that the district court should not have issued the restitution order until July 18, 2015, or 30 days after he was notified of the restitution request. The restitution statute states that "[a]n offender may challenge restitution, but *must* do so by requesting a hearing within 30 days of receiving written notification of the amount of restitution requested, or within 30 days of sentencing, whichever is later." Minn. Stat. § 611A.045, subd. 3(b)(2014) (emphasis added); *see State v. Borg*, 834 N.W.2d 194, 196 (Minn. 2013) (setting forth procedure for an offender to challenge restitution, including acknowledgement that under the restitution statute, the time for an offender to challenge claimed restitution expires 30 days after the offender receives notice of the restitution request or is sentenced, whichever is later).

"[T]he typical procedure that a defendant must follow in order to preserve a sentencing issue for appeal is to raise the issue with the district court." *State v. Gaiovnik*, 794 N.W.2d 643, 648 (Minn. 2011). In *State v. Thole*, this court stated, "Under the plain language of the [restitution] statute, a valid dispute arises only after an offender meets the threshold burden of raising a specific objection by affidavit." 614 N.W.2d 231, 235 (Minn. App. 2000). By failing to contest the claimed amount of restitution within 30 days as required by the restitution statute, appellant waived his right to challenge

8

restitution. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (stating that an appellate court will generally not consider matters not argued to and considered by the district court); *Mason v. State*, 652 N.W.2d 269, 272-73 (Minn. App. 2002) (stating that a district court's failure to inform an offender of the 30-day period for challenging a claim for restitution did not excuse the offender's failure to comply with the rule), *review denied* (Minn. Dec. 30, 2002).

*Sentence*. Appellant claims, and respondent agrees, that the district court erred by imposing as part of appellant's sentence a no-contact order to be issued upon his release from prison. "[A] district court may not impose a no-contact order as part of an executed sentence unless the order is expressly authorized by statute." *State v. Pugh*, 753 N.W.2d 308, 311 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008). While no-contact-type orders are allowed by statute in domestic-abuse crimes, *see, e.g.* Minn. Stat. § 518B.01, subd. 4 (2014), no statute permits the issuance of a no-contact order in conjunction with the crime of robbery. Because of this error, we reverse and direct the district court on remand to vacate the no-contact order portion of appellant's sentence. *See Pugh*, 753 N.W.2d at 311 (vacating no-contact order imposed as part of sentence for first-degree criminal sexual conduct).

**Affirmed in part, reversed in part, and remanded.**